**COMMONWEALTH of Pennsylvania,**
**Appellee**

**v.**

**Clinton Oliver MOURY, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 13, 2010.
Filed March 24, 2010.

---

Karen M. Oill Moury, Harrisburg, for appellant.

Megan K. Kampf, Asst. Dist. Atty., for Com., appellee.

BEFORE: BOWES, GANTMAN, and KELLY, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, Clinton Oliver Moury, appeals from the judgment of sentence entered in the Chester County Court of Common Pleas, following his jury trial convictions for two (2) counts of discharge of a firearm into an occupied structure,[1] carrying a firearm without a license,[2] possession of an instrument of crime with intent ("PIC"),[3] two (2) counts of driving under the influence ("DUI"),[4] six (6) counts of

1. 18 Pa.C.S.A. § 2707.1(a).

2. 18 Pa.C.S.A. § 6106(a)(1).

3. 18 Pa.C.S.A. § 907(a).

4. 75 Pa.C.S.A. §§ 3802(a)(1), 3802(b).

recklessly endangering another person ("REAP"),[5] accidental damage to unattended vehicle or property,[6] and two (2) counts of criminal conspiracy.[7] We affirm.

¶ 2 The court summarized the relevant facts and procedural history of this case as follows:

> The instant matter arises out of a shooting spree wherein [Appellant] and an accomplice, Anthony Bressi, drunkenly drove the roads of Chester County on the night of November 2, 2007, discharging pistol shots into road signs and occupied residences. On that night, State Police, responding to reports of gunfire, were dispatched to Westminster Drive in West Bradford Township. In the course of investigating the incident, Pennsylvania State Trooper Robert Duffy initiated a traffic stop on the Jeep Wrangler owned and operated by [Appellant]. Owing to a strong odor of alcohol emanating from the passenger compartment, Trooper Duffy administered a breath sobriety test on [Appellant] that tested positive for alcohol. During the course of the traffic stop, two pistols were recovered from the jeep's rear seat: a .45 caliber Ruger semi-automatic and a .357 caliber Taurus revolver. [Appellant] was transported to Chester County Hospital where blood was drawn, later testing of which would reveal the presence of alcohol. [Appellant] later testified that he was the owner of the Ruger pistol. Neither [Appellant] nor Bressi held permits to carry a firearm. During the course of the investigation conducted by the State police, it became clear that two residences on the 1300 block of Westminster Drive in West Bradford Township had been struck by bullets on the night of November 2, 2007. Both houses were occupied at the time of the shootings, in the case of 1345 Westminster Drive, two persons, including a three-year old child were present, in the house at 1341 Westminster, four persons were present, including a six-year old child with autism. A single embedded bullet was recovered from the interior of the home at 1341 Westminster Drive.

> On the night of the shootings, Bressi gave a voluntary statement to the investigating troopers wherein he admitted to firing the .357 revolver while a passenger in [Appellant's] car, and said that [Appellant] fired his own .45 semi-automatic from the driver's position. Bressi said that the pair intended to shoot at road signs, but could not identify what the pair fired at, other than to acknowledge that they fired at targets outside the car. [Appellant] testified at trial that Bressi fired both guns on the night in question—his own .357 at a stop sign whose location [Appellant] could not independently recall, and [Appellant's] .45 semi-automatic into the air.

(Trial Court Opinion, dated July 13, 2009, at 1–2). Mr. Bressi pled guilty and was sentenced pursuant to a negotiated plea agreement. Significantly, the Commonwealth offered the same plea deal to Appellant, which he rejected in favor of a jury trial.

¶ 3 From September 30 to October 3, 2008, the court held a jury trial. On October 3, 2008, the jury found Appellant guilty of discharging a firearm into an occupied structure, REAP, the DUI offenses, PIC, criminal conspiracy, and the firearm offense. On November 18, 2008, the court sentenced Appellant to two (2) to four (4)

---

5. 18 Pa.C.S.A. § 2705.

6. 75 Pa.C.S.A. § 3745(a).

7. 18 Pa.C.S.A. §§ 903(a)(1), 907(a), 6106(a)(1).

years incarceration for the first count of discharge of a firearm into an occupied structure, a consecutive sentence of one (1) to three (3) years incarceration for the second count of discharge of a firearm into an occupied structure; five (5) years probation on each PIC, firearms, and conspiracy charge, running concurrently to each other, but consecutive to the term of incarceration; and two (2) years probation for all of the six (6) counts of REAP, running concurrently to each other, but consecutively to the five (5) year probationary term. Appellant's aggregate sentence was three (3) to six (6) years of incarceration, followed by seven (7) years of probation.

¶ 4 On Monday, December 1, 2008, Appellant timely filed a post-sentence motion for modification of sentence. On December 2, 2008, the court denied Appellant's post-sentence motion. On December 31, 2008, Appellant filed a notice of appeal. On January 5, 2009, the court ordered Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P.1925(b), which Appellant timely filed on January 28, 2009.

¶ 5 Appellant raises three issues for our review:

DID THE SENTENCING COURT COMMIT REVERSIBLE ERROR AND ABUSE ITS DISCRETION BY VIOLATING FUNDAMENTAL NORMS THAT UNDERLIE THE SENTENCING PROCESS WHEN IT SENTENCED APPELLANT TO AN EXCESSIVE SENTENCE OF 3 TO 6 YEARS, FOLLOWED BY 7 YEARS OF PROBATION, BASED ON A DESIRE TO PUNISH APPELLANT FOR EXERCISING HIS CONSTITUTIONAL RIGHT TO A JURY TRIAL?

DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN FAILING TO GRANT A MISTRIAL WHEN CORPORAL DAVID KENNEDY TESTIFIED BEFORE THE JURY THAT APPELLANT HAD EXERCISED HIS CONSTITUTIONAL RIGHTS TO REMAIN SILENT FOLLOWING HIS ARREST AND TO BE REPRESENTED BY COUNSEL PRIOR TO ULTIMATELY GIVING A STATEMENT TO THE POLICE?

DID THE TRIAL COURT COMMIT REVERSIBLE ERROR DURING DELIVERY OF THE JURY INSTRUCTIONS BY PLACING UNDUE EMPHASIS ON ACCOMPLICE LIABILITY, DEPARTING FROM THE STANDARD INSTRUCTIONS AND PROVIDING AN INACCURATE AND MISLEADING SUMMARY OF THE EVIDENCE IN AN APPARENT ATTEMPT TO DIRECT A GUILTY VERDICT ON THE FELONY CHARGES?

(Appellant's Brief at 4).

¶ 6 In his first issue, Appellant argues the court was biased and expressed ill-will towards Appellant through the judgment of sentence, because Appellant had exercised his right to a jury trial. Appellant maintains he should have received a lighter sentence than his codefendant, where Appellant was the accomplice in their crimes, had no prior record, and expressed genuine remorse. Because Appellant chose to proceed to trial while his codefendant accepted a plea deal, Appellant is convinced the court was angry and sentenced Appellant to a much greater period of incarceration and probation. Appellant concludes the sentencing court's decision to impose such a harsh sentence on Appellant was unrelated to Appellant's actual convictions and amounted to "judicial vindictiveness due to Appellant exercising his constitutional right to a jury trial," and therefore constituted a "manifest abuse of discretion." (Appellant's Brief at 14).

¶ 7 Appellant concedes his minimum sentence is within the standard range of the sentencing guidelines on each count of discharge of a firearm into an occupied structure. Appellant further concedes the Sentencing Commission assigned this offense an offense gravity score of ten (10). Nonetheless, he argues the Sentencing Commission intended this offense gravity score to apply only to cases where a defendant **intentionally** fires a gun at an occupied structure. Appellant contends the fundamental norms underlying the Sentencing Code and our Supreme Court's decision in *Commonwealth v. Walls,* 592 Pa. 557, 926 A.2d 957 (2007), obligate a court to weigh the individual circumstances of a criminal defendant and modify the sentence to reflect the defendant's degree of culpability. According to Appellant, logic and justice should have compelled the sentencing court to consider the guidelines applicable to offenses with an offense gravity score of five (5) when determining his sentence because Appellant was no more than reckless and not a violent offender. Therefore, the court abused its discretion in strictly applying the guidelines to Appellant under the particular circumstances of this case.

¶ 8 Next, Appellant argues the court's imposition of consecutive sentences for each count of discharge of a firearm into an occupied structure was consistent with the court's "desired result to 'warehouse' him by imposing two sentences at the lower end of the guidelines range, to be run consecutively." (Appellant's Brief at 27). Appellant contends this Court's decisions in *Commonwealth v. Dodge,* 859 A.2d 771 (Pa.Super.2004), *appeal granted and order vacated,* 594 Pa. 345, 935 A.2d 1290 (2007)

("*Dodge I*") and following remand for reconsideration in *Commonwealth v. Dodge* 957 A.2d 1198 (Pa.Super.2008), *appeal denied,* 602 Pa. 662, 980 A.2d 605 (2009) ("*Dodge II*"), stand for the proposition that it is an abuse of discretion for a court to impose consecutive sentences "for conviction[s] arising from the same criminal activity" if the court makes only a "rather cursory explanation and other factors fail to justify the result." (Appellant's Brief at 28). Appellant asserts the court's explanation for imposing consecutive sentences was insufficient, given Appellant's lack of a prior criminal record, genuine remorse for his actions, payment of full restitution to the victims, and the lack of any bodily injury to the victims. Appellant also maintains his role in the criminal conduct is relevant to the length of the sentence and insists the court's imposition of consecutive sentences was improper because he was merely the accomplice. Appellant concludes this Court should vacate the judgment of sentence and remand the case for resentencing.[8] Appellant's claims challenge the discretionary aspects of sentencing.

¶ 9 Our review of discretionary aspects of sentencing claims implicates the following principles:

> [T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. ...[A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or

---

8. In his brief, Appellant also asserts the court abused its discretion in refusing to declare Appellant boot camp eligible. (*See* Appellant's Brief at 30–33). Appellant notified this Court that on November 9, 2009, the trial court amended its sentencing order to designate Appellant as Boot Camp Eligible; therefore, the claim was no longer relevant to the appeal.

the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.

*Walls, supra* at 564–65, 926 A.2d at 961 (internal citations omitted).

¶ 10 Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. *Commonwealth v. Sierra,* 752 A.2d 910, 912 (Pa.Super.2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

[W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans,* 901 A.2d 528, 533 (Pa.Super.2006), *appeal denied,* 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. *Commonwealth v. Mann,* 820 A.2d 788, 794 (Pa.Super.2003), *appeal denied,* 574 Pa. 759, 831 A.2d 599 (2003).

¶ 11 The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Paul,* 925 A.2d 825, 828 (Pa.Super.2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Sierra, supra* at 912–13.

¶ 12 As to what constitutes a substantial question, this Court does not accept bald assertions of sentencing errors. *Commonwealth v. Malovich,* 903 A.2d 1247, 1252 (Pa.Super.2006). An appellant must articulate the reasons the sentencing court's actions violated the sentencing code. *Id.*

¶ 13 A court's reliance on a defendant's decision to go to trial rather than accept a plea bargain constitutes an abuse of discretion and presents a substantial question. *See Commonwealth v. Bethea,* 474 Pa. 571, 575–76, 379 A.2d 102, 104 (1977) (noting "a practice which exacts a penalty for the exercise of the right [to a jury trial] is without justification and unconstitutional"); *Commonwealth v. Smithton,* 429 Pa.Super. 55, 631 A.2d 1053, 1056–57 (1993) (holding court abuses its discretion if it considers irrelevant factors during sentencing such as defendant's decision to stand trial rather than plead guilty, any prior constitutionally infirm convictions, defendant's political ideology, defendant's citizenship status, or unverified hearsay).

¶ 14 A codefendant who has successfully negotiated a plea deal and a defendant sentenced after a jury trial, however, are not similarly situated for sentencing purposes. *Commonwealth v. Losch,* 369 Pa.Super. 192, 535 A.2d 115, 124 (1987). Thus, a disparity in sentencing between a defendant sentenced after a trial and a codefendant sentenced pursuant to a negotiated plea deal does not demonstrate the trial court penalized the defendant for exercising his right to a jury trial. *Id. See also Commonwealth v. Dougherty,* 351 Pa.Super. 603, 506 A.2d 936, 941 (1986) (observing defendant's statutory minimum sentence resulted from defendant's conviction for drunk driving and was not a penalty for defendant's decision to exercise his right to a jury trial rather than accepting an Accelerated Rehabilitation Disposition).

¶ 15 An allegation that the sentencing court failed to consider certain mitigating factors generally does not necessarily raise a substantial question. *Commonwealth v. McNabb,* 819 A.2d 54, 57 (Pa.Super.2003). *Accord Commonwealth v. Wellor,* 731 A.2d 152, 155 (Pa.Super.1999) (reiterating allegation that sentencing court "failed to consider" or "did not adequately consider" certain factors generally does not raise substantial question). *Compare Commonwealth v. Felmlee,* 828 A.2d 1105, 1107 (Pa.Super.2003) (*en banc* ) (stating substantial question is raised, however, where appellant alleges sentencing court imposed sentence in aggravated range without adequately considering mitigating circumstances).

¶ 16 "When imposing a sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Griffin,* 804 A.2d 1, 10 (Pa.Super.2002), *appeal denied,* 582 Pa. 671, 868 A.2d 1198 (2005), *cert. denied,* 545 U.S. 1148, 125 S.Ct. 2984, 162 L.Ed.2d 902 (2005). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." *Id.* Where the sentencing court had the benefit of a presentence investigation report ("PSI"), we can assume the sentencing court "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Devers,* 519 Pa. 88, 101–02, 546 A.2d 12, 18 (1988). *See also Commonwealth v. Tirado,* 870 A.2d 362, 368 (Pa.Super.2005) (stating if sentencing court has benefit of PSI, law expects court was aware of relevant information regarding defendant's character and weighed those considerations along with any mitigating factors). Further, where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code. *See Commonwealth v. Cruz–Centeno,* 447 Pa.Super. 98, 668 A.2d 536 (1995), *appeal denied,* 544 Pa. 653, 676 A.2d 1195 (1996) (stating combination of PSI and standard range sentence, absent more, cannot be considered excessive or unreasonable).

¶ 17 Although Pennsylvania's system stands for individualized sentencing, the court is not required to impose the "minimum possible" confinement. *Walls, supra* at 570, 926 A.2d at 965. Under 42 Pa.C.S.A. § 9721, the court has discretion to impose sentences consecutively or concurrently and, ordinarily, a challenge to this exercise of discretion does not raise a substantial question. *Commonwealth v. Pass,* 914 A.2d 442, 446–47 (Pa.Super.2006). The imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly

harsh, considering the nature of the crimes and the length of imprisonment. *Id.* (holding challenge to court's imposition of sentence of six (6) to twenty-three (23) months imprisonment and sentence of one (1) year probation running consecutive, did not present substantial question). *Compare Dodge II, supra* (holding imposition of consecutive sentences totaling 58½ to 124 years imprisonment for thirty-seven (37) counts of theft-related offenses presented a substantial question because total sentence was essentially life sentence for forty-two year-old defendant who committed non-violent offenses with limited financial impact).

¶ 18 Instantly, Appellant did not object at sentencing or in his post-sentence motion to the court's alleged reliance on Appellant's decision to stand trial rather than accept a plea deal. Therefore, we deem waived Appellant's challenge to his sentence on that basis. *See Mann, supra.*

¶ 19 Moreover, nothing in the sentencing hearing transcript indicates the court improperly relied upon Appellant's decision occurred to exercise his right to a jury trial. At sentencing, the following exchange occurred:

> THE COURT: I'm asking you if you accept all of the responsibility for your own conduct and that of Mr. Bressi, because it is beyond dispute that Mr. Bressi was firing a gun whose bullets were flying into homes. If you were equally responsible for his actions, as you just told me, what was the sense of the trial, other than to exercise your constitutional rights, which you are entitled to execute, but in doing so, you're telling me that you knew that you were responsible for his actions. And yet, at that point you were not willing to accept that responsibility without first having exercised your constitutional rights,

which I understand you're entitled to do that.

> But it brings me back to my question to you earlier, if you seek to invoke all of your rights and procedures in this, knowing full well that you were responsible for the conduct of Mr. Bressi and yourself, why should I deviate from what would otherwise be the available procedure in guiding my sentence? You live by the sword, you die by the sword. Mr. Bressi decided to avoid the battle, accept a deal, which was a heck of a good deal, and you did not. So why is it that I should consider for you a sentence other than what would procedurally be the norm, since you decided to avail yourself of your rights, which you're entitled to do? There's an inconsistency between accepting responsibility and invoking every procedural right that you can.

\*       \*       \*

> [APPELLANT]: Every time I keep saying stuff seems like I'm digging myself into a hole.

> THE COURT: No, it's the same theme because in order to avail yourself of your constitutional rights, which you're entitled to do, that you must bring in the victims to testify and relive the process, and put the Commonwealth to its task, which it has done. And they have, again, testified and a jury has said to you apparently, which you have said to me, that you knew from the outset that you were responsible not only for your actions, but for Mr. Bressi's. So, we came full circle.

\*       \*       \*

> Well, it's what is logically not making sense to me.

> [APPELLANT]: I know it doesn't make sense.

THE COURT: Other than the fact that you invoked your constitutional procedural rights to have the jury tell you something that you already knew, so what does that say to me at this moment?

[APPELLANT]: I'm not exactly sure. You misunderstood me. I think I'll try again.

THE COURT: Try again.

[APPELLANT]: The reason that we went to trial was because—not because I said that I wasn't there or this never happened, I was—that was never an issue. And the way the charge was explained to me, the conscious disregard and all that, I didn't feel that it was— that I was guilty of it. And furthermore, I didn't really feel that even though Anthony had fired a gun into the houses, I'm not so sure he was guilty of it either. He chose to plead guilty because he was worried about going to trial, and he just took the safe way out. And looking back that may have been the best thing for me to do too, but it's not what I did.

But I'm just—I didn't just have a trial for no reason. I didn't want to, believe me, I didn't want to do that. It's not something I would consider fun. But I felt it was necessary because I couldn't plead guilty to something I didn't really feel that I was guilty of. And now I've been found guilty and I accept that.

THE COURT: Fair enough.

(N.T. Sentencing Hearing, 11/18/08, at 47–49; R.R. at 459a–461a). Contrary to Appellant's assertion, this exchange does not signify the court, when sentencing Appellant, improperly relied upon Appellant's decision to stand trial. Rather, read in context, this exchange indicates the court viewed Appellant's allocution as a plea for sentence mitigation. Consequently, the court sought to understand why it should accept Appellant's apology and acceptance of responsibility as a reason to deviate from the court's regular sentencing procedures.

¶ 20 The following demonstrates the court relied only on permissible factors in sentencing Appellant:

[Appellant], I have listened to what has been presented to me today. I've read the letter from Barry Murray, your manager, dated November 16th, 2008, at Firestone. I read through the presentence investigation prepared by adult probation and I've read through your sentencing memorandum submitted by Mr. Tully. I listened to all of the facts presented at trial, and listened to the verdict of the jury. I have considered all of the sentencing alternatives that are available to me under the sentencing code, including the imposition of no sentence, imposition of fines, of intermediate punishment, of partial confinement, of probation, and of total confinement. This is truly a sad case, with the only saving grace that no one was, in fact, shot.

It is, again, the example of lack of maturity and insight coupled with alcohol, coupled with complete and total lack of regard for the dangerousness of a weapon, combined with the fact that you were operating another delivery system for those bullets, that means the Jeep that you were using that evening. But you not only delivered yourself and Mr. Bressi to the point of firing the gun, but were actually driving that vehicle while under the influence of alcohol. . . .

I firmly believe that you did not intend to hurt anybody that evening, but it seems to me that your conduct was at least reckless, if not knowing. And it seems to me that any of that conduct, combined with the discharge of a firearm in this situation, combined with al-

cohol, requires a sentence of total confinement, and to do otherwise would seriously depreciate the seriousness of the crimes of which you were convicted.

* * *

So the record is clear, [Appellant], I imposed consecutive sentences on the two discharging firearm charges that equal the upper end of the standard range on one of the counts. But there are two completely distinct actions that you engaged in that resulted in the bullets entering into those separate residences at separate times. I believe that the three to six year sentence is appropriate.

I believe that Mr. Bressi got himself a very good deal, but he chose to take that, and to, in essence, preempt me. I asked you about processes because my sentence is completely in line with the process that would ordinarily take place in this sentencing proceeding. The combined sentence is within the standard range for one conviction, I could have imposed them consecutively. Because of the facts and circumstances in this case, I chose not to do that. But I impose consecutive sentences, so it's clear in your mind you have to be paroled on one before you start serving the sentence on the other. But your conduct impacted two separate households and at least six people, all of which, if you had read the victim impact statement in the presentence investigation, impacted them significantly.

(N.T. Sentencing Hearing, at 52–53, 57–58; R.R. at 464a–465a, 469a–470a). The court's sentencing discourse indicates it properly relied upon the evidence adduced at trial, testimony during the sentencing hearing, and the PSI when it sentenced Appellant. Thus, we conclude the court did not penalize Appellant for exercising his right to stand trial.

▆▆▆▆ ¶ 21 Further, co-defendant Bressi's receipt of a lighter sentence does not automatically demonstrate the court penalized Appellant for his decision to go to trial. *See Losch, supra.* Appellant and Mr. Bressi were not similarly situated for the purposes of sentencing, where Mr. Bressi negotiated and accepted a plea deal. *See id.* In fact, the court explained the disparity between Appellant's and Mr. Bressi's sentences, noting that Mr. Bressi's plea deal preempted the court's normal sentencing procedures. (*See* N.T. Sentencing Hearing at 57; R.R. at 464a).[9]

¶ 22 Additionally, Appellant provides no relevant legal citations to support his contention that the Sentencing Commission planned or meant for courts to mitigate the sentence of an individual convicted of discharging a firearm into an occupied structure, based on the defendant's level of *mens rea.* The Pennsylvania Sentencing Guidelines assign discharge of a firearm into an occupied structure the offense gravity score of ten (10). *See* 204 Pa.Code § 303.15. The Sentencing Guidelines contain no other information regarding how a court should impose sentence for this con-

9. Appellant also refers to comments the court allegedly made prior to trial, and to the transcript of co-defendant Bressi's sentencing hearing, to support Appellant's argument the court during sentencing relied on Appellant's decision to stand trial. The transcript of Mr. Bressi's sentencing hearing appears in the reproduced record at 43a–70a; however, that transcript is not part of the certified record in the present case. Additionally, the court's pretrial comments to Appellant appear nowhere in the certified record. Consequently, we will not consider the court's alleged comments or information taken only from Mr. Bressi's sentencing hearing. *See Commonwealth v. Preston,* 904 A.2d 1, 6 (Pa.Super.2006) (*en banc*), *appeal denied,* 591 Pa. 663, 916 A.2d 632 (2007) (stating this Court will consider only materials in certified record when resolving issue on appeal).

viction or most notably instruct a court to mitigate a defendant's sentence under 18 Pa.C.S.A. § 2707.1, based on the defendant's *mens rea*. *See* 204 Pa.Code §§ 303.1 *et seq.* Here, the court sentenced Appellant in the low end of the standard range of the sentencing guidelines, and Appellant has given us no legitimate reason to call that sentence into question. *See Sierra, supra.*

¶ 23 Finally, as presented, the court's alleged failure to consider mitigating factors in its decision to impose consecutive sentences does not raise a substantial question. *See Pass, supra.* Appellant was convicted of two counts of discharge of a firearm into an occupied structure and received a sentence of two (2) to four (4) years on one count and a consecutive one (1) to two (2) years on the second count. The standard minimum sentencing range for this offense is 22–36 months. Appellant's minimum sentence for each count of discharge of a firearm into an occupied structure fell within the low end of this range. Prior to sentencing, the court heard and considered the testimony of the victims, numerous character witnesses testifying on behalf of Appellant, and Appellant. Additionally, the court had a benefit of a PSI; therefore, we presume the court was aware of and weighed information concerning Appellant's character when making its sentencing decision. *See Devers, supra.* The sentencing discourse demonstrated the court considered the particular circumstances of the offenses, Appellant's role, and Appellant's character when sentencing. That the court refused to weigh the proposed mitigating factors as Appellant wished, absent more, does not raise a substantial question. *See McNabb, supra; Wellor, supra.* Given the nature of Appellant's crimes, the court's decision to impose these two sentences consecutively likewise does not fall within *Dodge II.*

Therefore, we decline to disturb the judgment of sentence on the grounds alleged.

¶ 24 In his second issue, Appellant argues the district attorney called Police Corporal Kennedy as a witness solely to elicit testimony regarding Appellant's decision to exercise his right to counsel immediately after his arrest. Appellant asserts the evidence of his later statement to the police did not mitigate the prejudice caused by the jury's exposure to Appellant's initial decision to invoke his rights. Appellant maintains the need to explain his later statement to the police, and the involuntary nature of that statement, distracted him from his testimony about his role in the offenses and undermined the strength of his testimony. Appellant argues the damage to his credibility was compounded by the jury's "natural inclination ... to be trustful of law enforcement officials." (Appellant's Brief at 39). Appellant maintains the court's attempt to cure this prejudice through cautionary instructions to the jury was insufficient, and the only adequate remedy was a mistrial. Appellant concludes this Court should vacate the judgment of sentence and remand the matter for a new trial. We disagree.

[25] ¶ 25 "[W]hether to declare a mistrial is a decision which rests within the sound discretion of the trial court, whose exercise thereof will not be reversed absent an abuse of such discretion." *Commonwealth v. Boone,* 862 A.2d 639, 646 (Pa.Super.2004). In evaluating the constitutionality of a reference to post-arrest silence, the Supreme Court held:

> The accused in a criminal proceeding has a legitimate expectation that no penalty will attach to the lawful exercise of his constitutional right to remain silent. Consequently, this [C]ourt held in

*Turner*[10] that a defendant cannot be impeached by use of the inconsistency between his silence at the time of his arrest and his testimony at trial.

\* \* \*

Following *Turner,* this [C]ourt has been consistent in prohibiting the post-arrest silence of an accused to be used to his detriment. However, not all references to post-arrest silence were found to be detrimental to the accused so as to fall within the ambit of the rule of *Turner.*

*Commonwealth v. Mitchell,* 576 Pa. 258, 277, 839 A.2d 202, 212–13 (2003) (internal citations omitted). "[W]here a prosecutor's reference to a defendant's silence is a fair response to a claim made by defendant or his counsel at trial, there is no violation of the Fifth Amendment privilege against self-incrimination." *Commonwealth v. Copenhefer,* 553 Pa. 285, 303, 719 A.2d 242, 251 (1998), cert. denied, 528 U.S. 830, 120 S.Ct. 86, 145 L.Ed.2d 73 (1999). "To run afoul of the rule in *Turner,* it must be clear that the testimonial reference is to post-arrest silence." *Mitchell, supra* at 278, 839 A.2d at 213.

¶ 26 If the Commonwealth mentions a defendant's post-arrest silence, the court might still be able to cure any prejudice through prompt and adequate curative instructions.[11] *Boone, supra.* To evaluate whether cautionary instructions can cure a reference to a defendant's post-arrest silence, "courts must consider 1) the nature of the reference to the defendant's silence; 2) how it was elicited; 3) whether the district attorney exploited it; and 4) the promptness and adequacy of the cautionary instructions." *Commonwealth v. Pearson,* 454 Pa.Super. 313, 685 A.2d 551, 554 (1996), *appeal denied,* 549 Pa. 699, 700 A.2d 439 (1997). If the reference to the defendant's post-arrest silence was such that it incurably compromised the jury's objectivity and would deprive the defendant of a fair trial, then the court should grant a mistrial. *Id.*

¶ 27 A reference to a defendant's post-arrest silence could also constitute harmless error. *See Boone, supra.* The reference is harmless error if:

[T]he appellate court concludes beyond a reasonable doubt that the error could not have contributed to the verdict. If there is a reasonable possibility that the error may have contributed to the verdict, it is not harmless. In reaching that conclusion, the reviewing court will find an error harmless where the uncontradicted evidence of guilt is overwhelming, so that by comparison the error is insignificant.

*Mitchell, supra* at 280, 839 A.2d at 214–215. If a reference to a defendant's post-arrest silence is harmless error, then a new trial is not warranted. *Commonwealth v. Costa,* 560 Pa. 95, 98, 742 A.2d 1076, 1077 (1999).

¶ 28 Instantly, the following exchange between the prosecution and its witness, Corporal Kennedy, occurred:

[Commonwealth]: And Corporal Kennedy, were you present when these—did

---

**10.** *Commonwealth v. Turner,* 499 Pa. 579, 454 A.2d 537 (1982).

**11.** Appellant analogizes to *Commonwealth v. Lettau,* 955 A.2d 360 (Pa.Super.2008), to support his contention that the only adequate remedy for a trial reference to a defendant's right to remain silent is to declare a mistrial. We observe the Pennsylvania Supreme Court reversed the Superior Court's holding in *Lettau* in a decision published after Appellant had filed his brief. *See Commonwealth v. Lettau,* —— Pa. ——, 986 A.2d 114 (2009) (holding testimony about defendant's pre-arrest silence permissible to rebut defendant's claim he cooperated with police investigation).

you, in fact read these [*Miranda*] rights to [Appellant] or was it Corporal Trooper Vorhees?

[Corporal Kennedy]: Trooper Vorhees read these rights.

[Commonwealth]: And were you present?

[Corporal Kennedy]: I was.

[Commonwealth]: And did you speak with [Appellant] at this time?

[Corporal Kennedy]: At that point, [Appellant] invoked his right for an attorney. He does not wish to speak to us without an attorney.

(N.T. Kennedy Testimony Transcript, 10/3/08, at 9; R.R. at 223a). Appellant promptly objected to this testimony and asked for a mistrial. After discussing the objection with counsel, the court denied Appellant's motion for a mistrial and gave the following cautionary instructions:

All right, ladies and gentlemen, you've just heard the Corporal say that [Appellant] invoked his constitutional rights not to speak with the police. Couple things; one, the fact that a defendant may exercise his constitutional rights to speak or not to speak with the police is absolutely no reflection and should not be considered by you as any evidence or indication of the defendant's guilt, and should not be considered by you in your determination of whether or not the defendant is guilty or not guilty of any of the charges brought against him and I so instruct you.

Secondly, as you will find out, [Appellant] has made a statement to the police, and did it that night. And you'll hear the circumstances in which he did that. So, as a matter of law, the fact that he, at some point, invoked his right to remain silent should not be considered by you as any indication of [Appellant's] guilt. And should not be considered by you in your deliberations as to whether or not [Appellant] is guilty or not guilty of any of the charges. And as a practical matter he has, in fact, given a statement. And you'll now hear the circumstances regarding that.

(*Id.* at 12; R.R. at 226a). Corporal Kennedy immediately moved on and later testified about the voluntary statement Appellant made to police that day.

¶ 29 Under a *Pearson* analysis, in response to the Commonwealth's question, Corporal Kennedy stated Appellant invoked his right to remain silent. The Commonwealth did not, however, seek to exploit the reference. Additionally, nothing in the record indicates the Commonwealth had any improper purpose in asking the question. The court immediately gave curative instructions to the jury. Given the limited reference to Appellant's initial decision to have an attorney present, and the court's prompt response to Appellant's objection, we conclude the court's cautionary instructions were sufficient to cure any prejudice. *See Pearson, supra.*

¶ 30 Moreover, at trial the following uncontroverted evidence was adduced. On November 3, 2007, the police received complaints of shots being fired and a loud vehicle. The gunshots hit two houses; at the time, people were present in both houses. The police stopped Appellant's vehicle. Appellant exited the vehicle and displayed signs of intoxication. Later testing showed Appellant had a blood alcohol level of 0.124. The police found two guns in Appellant's vehicle. Co-defendant Bressi testified that he and Appellant got drunk, and then drove around shooting at signs. Mr. Bressi knew they were in a residential area, and Appellant chose where they would drive. Appellant testified that on November 3, 2007, he was drunk, decided to drive around and shoot signs with Mr. Bressi, knowingly drove his

Jeep while Mr. Bressi fired guns out the window, drove into a development, and did not at any time tell Mr. Bressi to stop firing the guns. Appellant admitted he was familiar with the area where he drove that night. Appellant did not dispute that the shots Mr. Bressi fired hit the two houses. Appellant also gave a voluntary statement to the police, which was entered into evidence at trial. Thus, the properly admitted evidence of Appellant's guilt was so overwhelming that the single reference to his post-arrest silence constituted harmless error. *See Mitchell, supra.* Consequently, we conclude a mistrial was unnecessary in this case. *See Boone, supra.*

¶ 31 In his final issue, Appellant contends the court placed too much emphasis on accomplice liability in its jury instructions and incorrectly summarized and defined accomplice liability. Specifically, Appellant contends the court neglected to inform the jury it could not find Appellant guilty as an accomplice of discharge of a firearm into an occupied structure, unless it also found Appellant intended to promote or facilitate Mr. Bressi's discharge of the guns into the houses. Appellant maintains the court's instructions on accomplice liability were an "apparent attempt to direct a guilty verdict on the felony charges of discharging a firearm into an occupied structure." (Appellant's Brief at 45). Appellant concludes this Court should vacate the judgment of sentence and remand the case for a new trial. We disagree.

¶ 32 A specific and timely objection must be made to preserve a challenge to a particular jury instruction. *Commonwealth v. Forbes,* 867 A.2d 1268, 1274 (Pa.Super.2005) (citing *Commonwealth v. McCloskey,* 835 A.2d 801 (Pa.Super.2003), *appeal denied,* 577 Pa. 713, 847 A.2d 1281 (2004)). Failure to do so results in waiver. *Forbes, supra.* Generally, a

defendant waives subsequent challenges to the propriety of the jury charge on appeal if he responds in the negative when the court asks whether additions or corrections to a jury charge are necessary. *McCloskey, supra* at 812. *See also Commonwealth v. Smallhoover,* 389 Pa.Super. 575, 567 A.2d 1055, 1059 (1989), *appeal denied,* 525 Pa. 626, 578 A.2d 413 (1990) (holding claim of erroneous charge waived where appellant responded negatively when "the court inquired whether counsel had any additions or corrections to the charge"); *Commonwealth v. Rineer,* 310 Pa.Super. 241, 456 A.2d 591, 595 (1983) (stating same).

¶ 33 "An appellate court must assess the jury instructions as a whole to determine whether they are fair and impartial." *Commonwealth v. Collins,* 546 Pa. 616, 620, 687 A.2d 1112, 1113 (1996).

> The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration.
>
> \* \* \*
>
> We will not rigidly inspect a jury charge, finding reversible error for every technical inaccuracy, but rather evaluate whether the charge sufficiently and accurately apprises a lay jury of the law it must consider in rendering its decision.

*Commonwealth v. Hannibal,* 562 Pa. 132, 139–140, 753 A.2d 1265, 1269 (2000), *cert. denied,* 532 U.S. 1039, 121 S.Ct. 2002, 149 L.Ed.2d 1004 (2001) (quoting *Commonwealth v. Prosdocimo,* 525 Pa. 147, 150, 154, 578 A.2d 1273, 1274, 1276 (1990)). "For [an] appellant to be entitled to a new trial, the jury instruction must have been fundamentally in error, or misled or confused the jury." *Commonwealth v.*

*Wright*, 599 Pa. 270, 315, 961 A.2d 119, 145 (2008).

¶ 34 Instantly, Appellant did not object when the court charged the jury or when the court responded to the jury's question regarding accomplice liability. (*See* N.T. Trial, 10/3/08, at 186–92; R.R. at 376a–382a). Further, the defense responded in the negative when the court asked if the defense wished to add anything to the jury instructions and when the court asked him if the defense had anything to add to the court's response to the jury's question on accomplice liability. Consequently, we conclude Appellant waived his challenge to the jury charge on accomplice liability. *See Forbes, supra; McCloskey, supra.*

¶ 35 Moreover, Appellant's challenge in this regard must fail. As the court reasoned:

> In the instant matter, [the court] expressed no opinion as to the veracity or weight to be accorded to any part of the evidence, nor did the [c]ourt offer any estimation of the respective strength or weaknesses of the cases presented by either the Commonwealth or the defense. [The court] simply accurately identified the uncontroverted fact of [Appellant's] having driven the vehicle on the night of the shootings as the act **offered by the Commonwealth** as being the basis for a finding of accomplice liability. There was no suggestion that the proffered theory of liability was a necessary or sufficient basis for a finding of guilt through accomplice liability. On the contrary, [the court's] passing summary served to identify, and not validate or endorse, a theory already offered to the jury. Moreover, even the neutral identification of [Appellant] as the driver was immediately followed by an explanation that the mere fact [Appellant] drove the car on the night in question is not enough to make a finding

of guilt through accomplice liability. The [c]ourt was careful to note that such a finding required the jury to also find [Appellant] "[Drove Bressi] around **with the knowledge of what it was that he was doing, and aiding him in that sense to bringing him around to do what he did."**

> [The court] did not misstate the evidence, or draw undue attention to a particular aspect of the proofs offered by either side in this matter. Rather, by referring (through a two-sentence summary) to what part of the evidence adduced related to accomplice liability, the [court] submits [it] acted within its discretion to make the relevant issue clear for the jury's benefit. It has long been the rule that accurate summaries of the evidence are a proper method of charging a jury, so long as the summary is not itself misleading.

(Trial Court Opinion at 7–8) (emphasis in original) (internal citations and footnotes omitted).

¶ 36 Contrary to Appellant's assertions, the court unequivocally instructed the jury it could find Appellant guilty as an accomplice **only if** the jury found Appellant had the intent of promoting or facilitating the crime charged. (*See* N.T. Trial, 10/3/08, at 187, 188, 191; R.R. at 377a, 378a, 381a; N.T. Jury Question No. 2, 10/3/08, at 3, 4; R.R. at 405a, 406a). The court also made clear the jury must consider each charged crime separately when determining Appellant's guilt. (*Id.* at 191; R.R. 381a; N.T. Jury Question No. 2, at 3; R.R. at 405a). The court permissibly explained the law in its own words, yet adequately and accurately presented the law to the jury. *See Hannibal, supra.* Thus, even if Appellant had properly preserved this issue, we would conclude it merits no relief. Ac-

cordingly, we affirm the judgment of sentence.

¶ 37 Judgment of sentence affirmed.