J-S33009-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANGEL LUIS DELGADO-MELENDEZ, SR., | |
| Appellant | No. 1073 MDA 2016 |

Appeal from the Judgment of Sentence Entered June 2, 2016
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0002664-2015

BEFORE: BENDER, P.J.E., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED JUNE 16, 2017**

Appellant, Angel Luis Delgado-Melendez, Sr., appeals from the judgment of sentence of an aggregate term of 6 to 20 years' incarceration, imposed after a jury convicted him of possession with intent to deliver a controlled substance (PWID) and other drug-related offenses. On appeal, Appellant challenges the sufficiency and weight of the evidence to sustain his convictions, as well as discretionary aspects of his sentence. After careful review, we affirm.

The trial court summarized the facts of this case, as established at Appellant's May 2016 jury trial, as follows:

> Appellant, [c]o-[defendant, Damaris Ramirez,] [Appellant's] sixteen year-old biological daughter (the

---

[*] Retired Senior Judge assigned to the Superior Court.

"Daughter"), and his eleven year-old son lived together at their family home…. On the evening of April 23, 2015, the Daughter was at the home with her younger brother. Twice, in the course of that evening, Rocky, identified by the Daughter as [Ramirez's] brother, entered and exited the home. On both occasions, Rocky went immediately into Appellant's bedroom, closed the door, produced sounds indicative of searching through Appellant's dresser [drawers], and then exited the house. During his time at the home, Rocky would say very little to the Daughter. Additionally, during his first visit, he locked Appellant's bedroom door and later left the room carrying something in his fist.

After the intrusion, the Daughter decided that she needed to secure the premises and seek assistance. Her first step was to secure the premises and prevent Rocky from returning. Next, she searched through Appellant's [drawers] and "[after she] moved the clothes to the side … [she] found a bag that was moved, so … [she] opened the bag and … [she] pulled out two bag things and a little thing of powder…." After uncovering the substances, using her cellphone, she sent a picture of the substances to her Aunt. Later, the Daughter had a discussion with her Aunt about the material she discovered. Finally, after speaking with [her] Aunt…, the Daughter went to City Hall, reported the incident, and at some point returned home.

Subsequently, the City dispatched Officer Bradley McClure to Appellant's home to conduct a safety check of the premises, at the Aunt's bequest. Seeing the Officer, the Daughter came outside to talk. On her own initiative, the Daughter informed the Officer that there were drugs in the house. To corroborate her allegation, the Daughter showed the Officer a video of the drugs. After viewing this video, the Officer relayed the information to Sergeant Rodger, who then called the VICE unit and Child and Youth Services. A search warrant was applied for and was received.

…

Acting on the search warrant, Investigator [Darren] Smith, along with Sergeant Rodger,[1] Officer McClure, and another

_____

[1] No first name was given for Sergeant Rodger.

officer, entered Appellant's house. The whole house was searched, however items related to the drug trade were only found in Appellant's and [Ramirez's] shared bedroom. In terms of drugs, the police found [the] following quantities and types of drugs packaged in bulk in Appellant's and [Ramirez's] dresser [drawers]: [49.51 grams of cocaine, 15.47 grams of cocaine, and 4.93 grams of Methamphetamine.]

Additionally, a spoon, a scale, resealable disposable bags, and mail addressed to Appellant were found in the [drawers] along with the drugs. The rest of the bedroom was also searched and investigators uncovered a Pepsi box containing a bottle of lidocaine and inositol.

Finally, at trial, Investigator Kevin Hasser, qualified as an expert in the drug[] trade, testified that the material found in Appellant's bedroom was indicative of a drug dealer. First, Hasser related to the [c]ourt that large bulk quantities of drugs tend to indicate that the drugs were for sale, because by repackaging and selling the drugs a significant profit could be made. Second, Hasser related that the paraphernalia found was indicative of a drug dealer trying to maximize his profit and reputation. Specifically, the presence of a spoon for apportioning the drugs, the baggies to create ready doses of the drugs for resale, and the scale to weigh the drugs all indicated that there was a concerted effort to effectively distribute the drugs in the intended quantity, which would balance the dealers['] profitability and reputation concerns. Furthermore, the presence of lidocaine and inositol were indicative of the practice of cutting drugs. Hasser reasoned that due to the numbing effect of these substances, a user can be fooled into thinking he is consuming higher quality cocaine. It follows, that a dealer attempting to maximize profitability would attempt to stretch his product, while protecting the reputation of the quality of his stock through this deception. Relying on all aforementioned factors, under the totality of the circumstances, Hasser was able to conclude that the house had function[ed] as a stash house, an integral part of a drug deal operation.

Trial Court Opinion, 9/19/16, at 2-4 (citations to the record omitted).

Based on this evidence, a jury convicted Appellant of two counts each

of PWID, 35 Pa.C.S. § 780-113(a)(3); conspiracy to commit PWID, 18

Pa.C.S. § 903(a) and 35 Pa.C.S. § 780-113(a)(3); possession of a controlled substance, 35 Pa.C.S. § 780-113(a)(16); and conspiracy to commit possession of a controlled substance, 18 Pa.C.S. § 903(a) and 35 Pa.C.S. § 780-113(a)(16). He was also convicted of single counts of possession of drug paraphernalia, 35 Pa.C.S. § 780-113(a)(32), and conspiracy to commit possession of drug paraphernalia, 18 Pa.C.S. § 903(a) and 35 Pa.C.S. § 780-113(a)(32). On June 2, 2016, Appellant was sentenced to the aggregate term of incarceration stated *supra*.

Appellant filed a post-sentence motion, which the court denied. He then filed a timely notice of appeal, and he also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, Appellant presents two issues for our review:

> A. Whether the evidence was insufficient as a matter of law and [whether the verdict was] against the weight of the evidence to convict [] Appellant of [PWID] and related charges where there was no evidence that [] Appellant participated in drug trafficking or had knowledge that drug trafficking was occurring in his house?
>
> B. Whether the trial court abused its discretion by imposing a sentence that was manifestly excessive and did not consider the Sentencing Code criteria?

Appellant's Brief at 5 (unnecessary capitalization omitted).

Within Appellant's first issue, he presents two separate claims - a challenge to the sufficiency of the evidence to sustain his convictions, and a challenge to the weight of the evidence to support the jury's verdict.

The distinction between these two challenges is critical. A claim challenging the sufficiency of the evidence, if granted, would preclude retrial under the double jeopardy provisions of the Fifth Amendment to the United States Constitution, and Article I, Section 10 of the Pennsylvania Constitution, whereas a claim challenging the weight of the evidence if granted would permit a second trial.

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 751–52 (Pa. 2000) (internal citations, quotation marks, and footnote omitted).

Here, Appellant proffers the same argument in support of both his sufficiency and weight claims. Essentially, he maintains that the jury should have believed the testimony of his daughter, who "did not testify that she ever saw [Appellant] with any drugs" and she only "believed that he was a drug addict." Appellant's Brief at 13. Appellant also argues that the Commonwealth failed to prove that he knew about the drugs, or constructively possessed them. Appellant stresses that there was no evidence that he ever touched the drugs, or that he even knew they were in the bedroom, as they "were not exposed items that were clearly visible." *Id.* at 13, 14.

Appellant's arguments are unconvincing. The circumstantial evidence was sufficient to demonstrate that he constructively possessed the drugs and paraphernalia that were recovered from the bedroom that he shared with Ramirez.

> When contraband is not found on the defendant's person, the Commonwealth must establish "constructive possession," that is, the power to control the contraband and the intent to exercise that control. *Commonwealth v. Valette*, 531 Pa. 384, 613 A.2d 548 (1992).
>
> The fact that another person may also have control and access does not eliminate the defendant's constructive possession; two actors may have joint control and equal access and thus both may constructively possess the contraband. *Commonwealth v. Mudrick*, 510 Pa. 305, 507 A.2d 1212 (1986). As with any other element of a crime, constructive possession may be proven by circumstantial evidence. *Commonwealth v. Macolino*, 503 Pa. 201, 469 A.2d 132 (1983). The requisite knowledge and intent may be inferred from examination of the totality of the circumstances. *Commonwealth v. Thompson*, 286 Pa. Super. 31, 428 A.2d 223 (1981). The fact that the contraband is located

in an area usually accessible only to the defendant may lead to an inference that he placed it there or knew of its presence. *Id.*

***Commonwealth v. Haskins***, 677 A.2d 328, 330 (Pa. Super. 1996).

In this case, the drugs were found in Appellant's bedroom, a location to which he had unfettered access. The drugs and paraphernalia were found in a dresser drawer, and "[r]ight next to the drugs" was mail addressed to Appellant. N.T. Trial at 174. Also in that drawer, officers found Appellant's voter registration card and a bank card with his name on it. *Id.* at 174, 177. The fact that the drugs and paraphernalia were not only located within Appellant's bedroom, but were also found in a drawer next to his mail, voter registration card, and bank card, was strong circumstantial evidence that Appellant constructively possessed the drugs and paraphernalia.

Additionally, Appellant's daughter testified that Ramirez's brother, 'Rocky,' had asked for Appellant both times he had come into the house and rifled through Appellant's dresser drawer. *Id.* at 95, 100. Appellant's daughter further testified that, in the "couple months" prior to this incident, Rocky had come to their home "every two days," and asked for Appellant. *Id.* at 111. On those occasions, Rocky and Appellant would go into Appellant's bedroom and lock the door, and then Rocky would "leave real quick[,]" spending only 10 to 15 minutes in the home at a time. *Id.* at 111-12. This evidence further bolstered the inference that Appellant knew about, and had constructive possession of, the drugs that were found in the drawer in which Rocky was rummaging on the day of the incident.

Thus, we conclude that the totality of the evidence was sufficient to prove that Appellant constructively possessed the drugs and paraphernalia found in his bedroom. Moreover, the jury was free to disbelieve any evidence suggesting that Appellant did not sell drugs, such as his daughter's testimony that he was only a drug user. *See Commonwealth v. Jones*, 874 A.2d 108, 121 (Pa. Super. 2005) ("[T]he [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.") (citations omitted). Finally, we ascertain no abuse of discretion in the trial court's rejection of Appellant's weight-of-the-evidence claim, which is premised on the same arguments as his challenge to the sufficiency of the evidence.

Next, Appellant attacks the discretionary aspects of his sentence.

Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. *Commonwealth v. Sierra*, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed.

> *Commonwealth v. Mann*, 820 A.2d 788, 794 (Pa. Super. 2003), *appeal denied*, 574 Pa. 759, 831 A.2d 599 (2003).
>
> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Paul*, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Sierra, supra* at 912–13.

*Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa. Super. 2013) (quoting *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010)).

Here, Appellant has met the first three prerequisites for review of his discretionary aspects of sentencing claims. Therefore, we must next assess whether his claims constitute substantial questions for our review. In Appellant's Rule 2119(f) statement, he essentially contends that the court failed to properly weigh mitigating factors when fashioning his sentence. *See* Appellant's Brief at 6 (stressing that Appellant "had no criminal record, a strong work and family history" and did not commit a violent crime). Appellant also argues that his sentence is excessive because the court imposed "each term of imprisonment consecutive to each other." *Id.* This Court has previously concluded that, generally, neither of these arguments constitutes a substantial question for our review. *See Moury*, 992 A.2d at 171 ("An allegation that the sentencing court failed to consider certain mitigating factors generally does not necessarily raise a substantial question.") (citations omitted); *id.* ("Under 42 Pa.C.S.A. § 9721, the court has discretion to impose sentences consecutively or concurrently and,

- 9 -

ordinarily, a challenge to this exercise of discretion does not raise a substantial question."). However, more recently, we recognized that "an excessive sentence claim - in conjunction with an assertion that the court failed to consider mitigating factors - raises a substantial question." *Commonwealth v. Swope*, 123 A.3d 333, 339 (Pa. Super. 2015) (citation omitted). In light of *Swope*, we will construe Appellant's claims as constituting a substantial question for our review.

Nevertheless, Appellant's arguments are meritless. It is well-established that,

> [s]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006) (citation omitted).

In the present case, Appellant avers that the court failed to consider mitigating circumstances and that it imposed an excessive sentence, yet the record demonstrates otherwise. Specifically, at the sentencing hearing, both the Commonwealth and defense counsel stated that Appellant had a prior record score of zero, and the court was obviously aware that Appellant's crimes were non-violent, as the sentencing judge also presided over his trial. *See* N.T. Sentencing Hearing, 6/2/16, at 4, 7. Additionally, defense counsel

stressed that Appellant "has worked for 20 years for the same person[,]" and that that employer "trusted [Appellant] in his business." *Id.* at 8. The court also had the benefit of a presentence report, and it ultimately imposed standard range sentences. Thus, we presume that Appellant's sentence is "appropriate under the Sentencing Code[,]" and that the "court was aware of relevant information regarding [Appellant's] character and weighed those considerations along with mitigating statutory factors." *Moury*, 992 A.2d at 171 (citations and internal quotation marks omitted). Finally, Appellant's bald assertion that the court's imposition of consecutive sentences resulted in an excessive term of incarceration is insufficient to demonstrate that the court acted with "partiality, prejudice, bias or ill will," or that it "arrived at a manifestly unreasonable decision." *Shugars*, 895 A.2d at 1275.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/16/2017

- 11 -