J-S61010-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| HARRY MICHAEL SZEKERES | |
| Appellant | No. 482 MDA 2015 |

Appeal from the Judgment of Sentence January 8, 2015
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0002247-2012

BEFORE: PANELLA, J., WECHT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY PANELLA, J.              **FILED DECEMBER 15, 2015**

Appellant, Harry Michael Szekeres, appeals from the judgment of sentence entered after he was convicted of 33 counts of sexual abuse of his daughter ("the victim"). Szekeres challenges the sufficiency and weight of the evidence supporting his convictions, his designation as a sexually violent predator ("SVP"), and the discretionary aspects of his sentence. After careful review, we conclude that none of Szekeres's claims merit relief, and therefore affirm.

At trial, the jury heard testimony from the victim that Szekeres had sexually abused her from age seven to age 19. The victim testified that she had delayed reporting the abuse until she realized that she had nieces that

---

[*] Retired Senior Judge assigned to the Superior Court.

were old enough for her father to victimize. The jury also heard a recorded phone conversation between the victim and Szekeres in which he admitted to making "a mistake touching my daughter." The jury found Szekeres guilty on all 33 charges.

The trial court ordered Szekeres to be assessed by the Pennsylvania Sexual Offender Assessment Board ("SOAB"), and scheduled a Megan's Law hearing. At the hearing, the SOAB representative, Dr. Robert Stein, a licensed psychologist, opined that Szekeres was a SVP. In contrast, Szekeres presented the expert testimony of Dr. Timothy Foley. Dr. Foley opined that Szekeres did not qualify as a SVP. The trial court found Szekeres to be a SVP, and ultimately sentenced him to an aggregate term of imprisonment of 16 to 32 years.

Szekeres filed a post-sentence motion, which the trial court denied. This timely appeal followed.

On appeal, Szekeres raises four issues for our review. Szekeres claims that his convictions were supported by insufficient evidence, or in the alternative, were against the weight of the evidence. In his third issue, Szekeres argues that the evidence did not support his designation as a SVP. In his fourth and final issue, Szekeres challenges the sentence imposed as excessive. We will address these issues in sequence.

In his first issue on appeal, Szekeres argues that the evidence presented at trial was insufficient to sustain his convictions. Szekeres does

not challenge the sufficiency of the evidence to support any specific element or elements of his convictions; rather, he contends that the victim's testimony is "in contravention of human experience[,]" and therefore categorically insufficient as a matter of law. Appellant's Brief, at 15 (citing **Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000)).

Szekeres concedes that the victim's testimony, under normal circumstances, was sufficient to sustain his convictions. **See** Appellant's Brief, at 14 (citing **Commonwealth v. Davis**, 650 A.2d 452 (Pa. Super. 1994)). However, he argues that the victim's decade long delay in reporting, as well as her admitted drug and alcohol abuse, corroborated and enhanced by testimony that she had experienced hallucinations of sexual abuse by various family members while intoxicated, rendered the victim's testimony insufficient as a matter of law. Even if we were to accept this argument, which we explicitly do not, Sekeres cannot overcome the inculpatory statements present in the recorded phone conversation with the victim.

During the conversation, the victim repeatedly asked Szekeres why he had sexually abused her. Several times, Szekeres implicitly admitted that he had. **See** Commonwealth's Exhibit 2, at 7:20, 7:50, 8:45. He further admitted that he knew that what he had done was wrong. **See id**., at 10:40. The victim repeatedly asked Szekeres for reassurances that her child would be safe in Szekeres's presence. Szekeres responded:

Hey it would never happen but … I don't know how I can reassure you other than that I would … I want to be a part of the grandchildren's lives to show them, here how it is, here's what this island looks like. … here's how I swing a hammer when I was young, here's things like that I mean I would never touch your children. I've never touched any children you were not, I made a mistake touching my daughter. And it seemed like it was okay for some reason in my mind and I, I continued it for, for a few years, several years. I don't know why, I don't know why it happened I wouldn't I would never touch anybody in anyway other than the huge mistake I made when you were young. I'm telling you I would never do that. I just want your mother, I want your mother to be so much part of your, your children and … part of your life in whatever way she can. If, if I don't have to be I mean I, do you know how many times I thought of taking my own life I, I could, but, but being the coward I am I can't do it. I can't do it. I, I thought of now being here how many ways could I, could I steal life from myself, which I, which I deserve to, to let the rest of the family live and go on. And I just can't make myself do it.

*Id*., at 11:40 – 13:15. These inculpatory statements are certainly sufficient to overcome any issues with the victim's credibility. We therefore conclude that Szekeres has failed to establish that the victim's testimony was so unrealiable as to be insufficient as a matter of law. Szekeres's first issue on appeal merits no relief.

Next, Szekeres challenges the weight of the evidence supporting his convictions. Our standard of review applicable to a challenge to the weight of the evidence is as follows.

[A] verdict is against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. It is well established that a weight of the evidence claim is addressed to the discretion of the trial court. … The role of the trial court is to determine that notwithstanding all the evidence, certain facts are so clearly of greater weight that to ignore them, or to give them equal weight with all the facts, is

- 4 -

to deny justice. A motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict; thus the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner.

Significantly, in a challenge to the weight of the evidence, the function of an appellate court … is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. It is for this reason that the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings.

*Commonwealth v. Rivera*, 983 A.2d 1211, 1225 (Pa. 2009) (internal citations and quotation marks omitted). While we are without the benefit of explicit reasoning from the trial court[1], we have little difficulty in concluding that the trial court did not abuse its discretion in denying the motion for a new trial. Szekere's second issue on appeal merits no relief.

In his third issue, Szekeres argues that the trial court erred in finding, by clear and convincing evidence, that he is a SVP. Specifically, Szekeres contends that the Commonwealth failed to prove that he is likely to re-offend. **See** Appellant's Brief, at 26. As with any sufficiency of the evidence

---

[1] The trial court found this issue waived, as Szekeres failed to explicitly specify the basis of his challenge in his statement of matters complained of on appeal. While Szekeres's statement is not a model of specificity, we decline to find waiver, as the nature of his challenge, that the victim was not a credible witness, is easily reviewed upon the record before us.

claim, we view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. We will reverse a trial court's determination of SVP status "only if the Commonwealth has not presented clear and convincing evidence sufficient that each element of the statute has been satisfied." ***Commonwealth v. Fuentes***, 991 A.2d 935, 942 (Pa. Super. 2010) (citation omitted). The task of the Superior Court on appeal of a trial court's classification of a criminal offender as a sexually violent predator "is one of review, and not of weighing and assessing evidence in the first instance." ***Commonwealth v. Meals***, 912 A.2d 213, 218 (Pa. 2006).

Megan's Law II defines "sexually violent predator" as a person suffering from a "mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses." 42 Pa.C.S.A. § 9792. The salient inquiry to be made by the trial court is the identification of the impetus behind the commission of the crime and the extent to which the offender is likely to reoffend. ***See Commonwealth v. Price***, 876 A.2d 988, 995 (Pa. Super. 2005).

Dr. Stein testified that the extended period during which Szekeres engaged in sexual abuse of his prepubescent daughter supported a finding that he suffered from a pedophilic disorder. ***See*** N.T., sentencing, 1/8/15, at 10-11. Dr. Stein further opined that the fact that the abuse continued for a significant time after the victim reached puberty supported a finding that

Szekeres suffered from "other specified paraphilic disorder nonconsent." **See id**., at 11-12. Based upon these findings, Dr. Stein concluded that Szekeres had demonstrated predatory behavior and therefore posed a high risk of re-offending. **See id**., at 15-16.

While Dr. Foley contradicted these findings, and highlighted many factors that undercut Dr. Stein's reasoning, the trial court was entitled to find Dr. Stein's testimony credible. Dr. Stein's testimony is sufficient to support a finding that Szekeres is likely to reoffend. Thus, Szekeres's third issue on appeal merits no relief.

In his fourth and final issue on appeal, Szekeres argues that the trial court imposed an excessive sentence. Szekeres concedes that this issue raises a challenge to the discretionary aspects of his sentence. **See** Appellant's Brief, at 9.

"A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." **Commonwealth v. McAfee**, 849 A.2d 270, 274 (Pa. Super. 2004) (citation omitted). When challenging the discretionary aspects of the sentence imposed, an appellant must present a substantial question as to the inappropriateness of the sentence. **See Commonwealth v. Tirado**, 870 A.2d 362, 365 (Pa. Super. 2005).

"Two requirements must be met before we will review this challenge on its merits." **McAfee**, 849 A.2d at 274 (citation omitted). "First, an

appellant must set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence." *Id*. (citation omitted). "Second, the appellant must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code." *Id*. (citation omitted). That is, "the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." *Tirado*, 870 A.2d at 365 (citation omitted).

We examine an appellant's Rule 2119(f) statement to determine whether a substantial question exists. *See id*. "Our inquiry must focus on the *reasons* for which the appeal is sought, in contrast to the *facts* underlying the appeal, which are necessary only to decide the appeal on the merits." *Id*. (citation omitted); *see also* Pa.R.A.P. 2119(f). "[W]e cannot look beyond the statement of questions presented and the prefatory 2119(f) statement to determine whether a substantial question exists." *Commonwealth v. Christine*, 78 A.3d 1, 10 (Pa. Super. 2013) (citation omitted).

In the present case, Szekere's appellate brief contains the requisite Rule 2119(f) concise statement, and, as such, is in technical compliance with the requirements to challenge the discretionary aspects of a sentence. Szekeres presents three separate arguments in his 2119(f) statement. First he argues in his Rule 2119(f) statement that the imposition of consecutive

sentences, as opposed to concurrent sentences, by the trial court was excessive. Next, he argues that the trial court failed to provide adequate reasons on the record for the sentence it imposed. Finally, Szekeres contends that the sentence imposed was not consistent with norms underlying the sentencing code. We will analyze whether these arguments raised a substantial question in sequence.

First, Szekeres claims that the imposition of consecutive sentences created an excessive sentence. "[W]here a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code." **Commonwealth v. Moury**, 992 A.2d 162, 171 (Pa. Super. 2010) (citations omitted). The imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment. **See id**., at 171-172.

Here, the aggregate sentence for 33 convictions of sexual abuse of a minor was 16 to 32 years in prison. Szekeres concedes that each individual sentence was within the guideline ranges. **See** Appellant's Brief, at 20. This is not an extreme circumstance. Thus, we conclude that Szekeres's first argument does not raise a substantial question.

Next, Szekeres argues that the trial court failed to put adequate reasons for its sentence on the record at sentencing. This claim, combined

with Szekeres's third claim, that the sentencing court failed to consider his rehabilitative needs, raises a substantial question for our review. *See Commonwealth v. Parlante*, 823 A.2d 927, 929-930 (Pa. Super. 2003).

> The standard of review with respect to sentencing is as follows.
>
> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006) (citation omitted).

Although Szekeres claims that the trial court erred in imposing a sentence that was inconsistent with the protection of the community and his rehabilitative needs, we note that the trial court reviewed a pre-sentence report. Where the trial court had the benefit of reviewing a pre-sentence report, we must

> presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention of engaging in an effort of legal purification, we state clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed. This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will

- 10 -

> presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand.

***Commonwealth v. Hallock***, 603 A.2d 612, 616 (Pa. Super. 1992) (citation omitted). As the trial court in this case had the benefit of a pre-sentence report, we must presume that it considered all relevant sentencing factors and did not impose a sentence based solely on the gravity of the offenses. Thus, Szekere's final issue on appeal merits no relief.

We conclude that none of Szekeres's issues on appeal merit relief. We therefore affirm the judgment of sentence.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/15/2015

- 11 -