J. S38001/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                          :             PENNSYLVANIA
               v.                 :
                                            :
LUIS ORTIZ RAMOS,            :          No. 1126 EDA 2015
                                          :
          Appellant       :

Appeal from the Judgment of Sentence, March 3, 2015,
in the Court of Common Pleas of Montgomery County
Criminal Division at No. CP-46-CR-0001470-2012

BEFORE: FORD ELLIOTT, P.J.E., OLSON AND JENKINS, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MAY 06, 2016**

Luis Ortiz Ramos appeals from the judgment of sentence entered by the Court of Common Pleas of Montgomery County on March 3, 2015, following his conviction in a jury trial of three counts of raping a child under the age of 13, two counts of involuntary deviate sexual intercourse ("IDSI") with a child under 13, three counts of aggravated indecent assault of a child under 13, and one count of indecent assault.[1] Prior to sentencing, the trial court designated appellant as a sexually violent predator. Thereafter, the court sentenced appellant to 30 to 200 years of incarceration, followed by 30 years of probation. We affirm.

The trial court set forth the following:

---

[1] 18 Pa.C.S.A. § 3121(c), 18 Pa.C.S.A. § 3123(b), 18 Pa.C.S.A. § 3125(b), and 18 Pa.C.S.A. § 3126, respectively.

Y.C., who was born September [], 2001, came from Puerto Rico to Hatfield, Montgomery County, in 2009 and began living with her mother, brother, grandmother and [appellant]. [Appellant], who came to the continental United States from Puerto Rico in 1955, was the long-time boyfriend of Y.C.'s grandmother. He and the family considered him to be like a step-grandfather to Y.C.

Prior to Y.C. beginning fifth grade in September 2011, [appellant] started taking video recordings of Y.C. and her friend V.G.[Footnote 2] while they were in the house and outside in the pool. In certain of the videos, the two minors are wearing bathing suits and [appellant] focused the camera on their breast and vaginal areas. The videos also include an instance where [appellant] touched one of V.G.'s breasts. As for Y.C., [appellant] touched her breasts and vaginal area with his hands on numerous occasions and eventually escalated to penetrating her vagina with his fingers and penis, touching her vaginal area with his tongue and putting his penis in and around her mouth. The heinous conduct occurred when [appellant] was babysitting Y.C. while her mother and grandmother were out of the house. [Appellant] threatened Y.C. that he would hit her if she did not give in to his demands for sexual contact. Y.C. did not report the incidents when they occurred because she was afraid.

[Footnote 2] V.G. was born August [], 2000.

[Appellant's] actions came to light when Y.C. and her family visited Puerto Rico without him in December 2011. Y.C. had brought [appellant's] camera with her on the trip. A family member discovered videos on the camera of Y.C. and V.G. and brought them to the attention of Y.C.'s mother. Y.C. eventually disclosed to her mother what [appellant] had been doing to her.

Upon returning to Hatfield, Y.C.'s mother alerted police to the videos. During the subsequent

investigation, [appellant] voluntarily appeared at the Hatfield Township police station and gave a statement to police. After being given his *Miranda*[2] warnings and waiving his right to remain silent, he admitted to taking videos of Y.C. and V.G. He also admitted that he touched Y.C.'s vagina, that he had tried to perform oral sex on Y.C. and that Y.C. put his penis in her mouth, although he claimed the minor was the aggressor.

[Appellant] was charged with over two dozens [sic] offenses, ranging from rape of a child to corruption of minors. He initially entered an open guilty plea to one count of involuntary deviate sexual intercourse with a child and one count of criminal attempt at involuntary deviate sexual intercourse with a child. [Appellant] withdrew the plea before sentencing and the case was scheduled for trial.

Prior to trial, [appellant] filed a motion to suppress his statement to police. He argued that he did not understand English well enough to make a knowing and voluntary waiver of his right to remain silent and he was not provided an attorney. This court denied the motion after a hearing at which it set forth on the record its findings-of-fact and conclusions-of-law.

A jury found [appellant] guilty of three counts of rape of a child under the age of 13,[Footnote 3] two counts of involuntary deviate sexual intercourse ("IDSI") with a child under 13,[Footnote 4] three counts of aggravated indecent assault of a child under 13[Footnote 5] and one count of indecent assault.[Footnote 6] At sentencing, this court found [appellant] to be a sexually violent predator. This court also sentenced [appellant] to consecutive terms of imprisonment of 6 to 40 years for each of the rape and IDSI offenses. [Appellant] received consecutive sentences of 10 years [sic] probation for each of the three aggravated indecent assault offenses. This court imposed no penalty for the

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

indecent assault charge. The sentences aggregate to 30 to 200 years in prison and 30 years of probation.

[Footnote 3] Counts 23-25 of the amended Information.

[Footnote 4] Counts 1-2 of the amended Information.

[Footnote 5] Counts 14-16 of the amended Information.

[Footnote 6] Count 19 of the amended Information.

[Appellant] filed a post-sentence motion. He challenged the denial of his motion to suppress and the discretionary aspects of his sentence. This court denied the motion and [appellant] filed an appeal to the Superior Court. [Appellant], through counsel, subsequently complied with this court's directive that he produce a concise statement of errors in accordance with Pennsylvania Rule of Appellate Procedure [1925(b)].

Trial court opinion, 6/19/15[3] at 1-4 (record citations omitted) (Footnote 7 omitted).

Appellant raises the following issues for our review:

I. Did the Court err by denying the Appellant's timely Motion to Suppress Evidence, namely the Appellant's incriminating statements?

II. Did the Court violate the Sentencing Code by imposing a sentence that was harsh and excessive under the circumstances?

Appellant's brief at 5.

---

[3] The trial court dated the opinion June 18, 2015, but filed it on June 19, 2015.

At the outset, we must determine whether appellant's first issue is properly before us.

In his first issue on appeal, the argument section of appellant's brief reveals that appellant's complaint is actually two-fold. First, appellant complains that the trial court erred in denying his motion to suppress appellant's incriminating statements because even though the trial court's factual findings support the conclusion that appellant is able to converse in English, there was no evidence presented at the suppression hearing that appellant is able to read and comprehend written English. Second, appellant complains that the arresting officer deceived appellant into going to the police station.

In his concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), appellant framed his first issue this way: "That the Court erred by denying [appellant's] timely Motion to Suppress Evidence, namely [appellant's] incriminating statements." (Docket #88.) In its Rule 1925(a) opinion, the trial court correctly noted that appellant's "vague concise statement does not indicate the ground(s) for his challenge to the suppression ruling." (Trial court opinion, 6/19/15 at 6 n.9.) Nevertheless, the trial court attempted to guess as to the precise issue appellant might raise with respect to the denial of his suppression motion, seemingly based on the record as it relates to the suppression motion and subsequent hearing. In so doing, the court incorporated its findings of fact and

conclusions of law that it placed on the record at the suppression hearing; specifically, that the court found the police detective credible when he testified as to appellant's ability to communicate in English and that it did not find appellant's self-serving statements credible insofar as his understanding of English was concerned. (*Id.* at 6.) Because appellant raised his inability to communicate in English in his omnibus pre-trial motion to suppress, because that issue was the subject of the suppression hearing, and because the trial court addressed that issue in its Rule 1925(a) opinion, we will review this claim.

Appellant, however, failed to raise his second claim regarding police deception with the trial court. Our careful review of the record shows that appellant never raised this issue in his omnibus pre-trial motion, that he never raised it at the suppression hearing, and the trial court did not address it in its Rule 1925(a) opinion. Therefore, appellant's failure to raise this issue with the trial court results in waiver. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Consequently, we need only address whether the record supports the trial court's determination that appellant's statements to the police detective were voluntary and admissible and whether that determination is free of legal error.

"The test for determining the voluntariness, and thus the admissibility, of an accused's statement is the totality of the circumstances surrounding the statement." *Commonwealth v. Bryant*, 67 A.3d 716, 724 (Pa. 2013) (citation omitted). Our supreme court set forth the following factors for consideration under a totality of the circumstances test to determine whether an accused freely and voluntarily made a statement:

> the duration and means of interrogation, including whether questioning was repeated, prolonged, or accompanied by physical abuse or threats thereof; the length of the accused's detention prior to the confession; whether the accused was advised of his or her constitutional rights; the attitude exhibited by the police during the interrogation; the accused's physical and psychological state, including whether he or she was injured, ill, drugged, or intoxicated; the conditions attendant to the detention, including whether the accused was deprived of food, drink, sleep, or medical attention; the age, education, and intelligence of the accused; the experience of the accused with law enforcement and the criminal justice system; and any other factors which might serve to drain one's powers of resistance to suggestion and coercion.

*Id.* (citation omitted).

> When we review the denial of a suppression motion, we are guided by the following principles:
>
>> [O]ur initial task is to determine whether the [trial court's] factual findings are supported by the record. In making this determination, we must consider only the evidence of the prosecution's witnesses, and so much evidence of the defense that remains uncontradicted when fairly read in the context of the record as a whole. When the evidence

> supports the factual findings, we are bound by such findings; we may reverse only if the legal conclusions drawn therefrom are erroneous.

*Id.* (citation omitted).

Here, during the suppression hearing, the Commonwealth proferred Detective Thomas E. Starner, Jr., who took appellant's initial statement. The defense presented appellant's testimony. Following the hearing, the trial court denied appellant's motion to suppress, expressly holding that it found Detective Starner's testimony credible and appellant's testimony incredible and self-serving. (Notes of testimony, 3/27/14 at 53, 57.)

Specifically, the court made the following findings of fact: Detective Starner has been a police officer for approximately 21 years. (*Id.* at 54.) All contact between Detective Starner and appellant was conducted in English. (*Id.*) Detective Starner initially contacted appellant via telephone and advised appellant that he wanted to interview appellant and provided the reason why. (*Id.*) Appellant responded that he lived close by and would drive over immediately. (*Id.*) When appellant arrived, Detective Starner greeted him in the lobby. (*Id.*) Detective Starner informed appellant of the nature of the investigation. (*Id.* at 55.) At no time did the detective observe anything that indicated that appellant had difficulty understanding English. (*Id.*)

When appellant entered the interview room, Detective Starner read verbatim the constitutional rights form warning section to appellant, and

appellant indicated that he understood the warnings. (*Id.*) Detective Starner then asked appellant to read the warnings, and after appellant was done reading, to sign and print his name to indicate that he understood the warnings. (*Id.* at 55-56.) Appellant complied. (*Id.* at 56 & Exhibit 1.) Detective Starner then read the waiver of constitutional rights to appellant and then asked appellant to read the waiver and then sign and print his name indicating that he understood the waiver. (*Id.* at 56.) Appellant complied. (*Id.*) Detective Starner then asked appellant whether appellant was willing to speak with him. (*Id.*) Appellant responded affirmatively. (*Id.*) After being assured of appellant's willingness to proceed, the formal question and answer was conducted. (*Id.*) At no point during the interview did Detective Starner observe any indication of any confusion of any kind by appellant as he responded to the detective's questions. (*Id.*)

The formal questions and answers were then typed on the investigation interview record. (*Id.*) Detective Starner then instructed appellant to review the typed questions and answers, and if appellant found them accurate, to initial each answer and sign each page. (*Id.*) Appellant reviewed the document for 10 to 15 minutes and initialed and signed each page. (*Id.* at 57 & Exhibit 2.)

The trial court further found that appellant has lived in the United States since 1955 and has worked in this country for 30 years. (*Id.* at 57.)

Based on the court's observations of appellant and appellant's testimony, the court found appellant not credible. (**Id.**)

Here, contrary to appellant's assertion, the Commonwealth produced evidence that appellant was able to read and comprehend written English when he made his incriminating statements. That ability, however, was just one of many factors that supported the trial court's conclusion that appellant made his statements freely and voluntarily. Therefore, under the totality of the circumstances, the record supports the trial court's determination that appellant made his statements freely and voluntarily, and consequently, those statements were admissible. We find no legal error.

Appellant's final complaint implicates the discretionary aspects of his sentence.

> [T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. . . . [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.
>
> The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a

- 10 -

> particular offense based upon an evaluation of the individual circumstances before it.

***Commonwealth v. Moury***, 992 A.2d 162, 169-170 (Pa.Super. 2010) (citation omitted).

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. ***Commonwealth v. Sierra***, [752 A.2d 910, 912 (Pa.Super. 2000)]. An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Moury***, 992 A.2d at 170 (citation omitted).

Here, the record reveals that appellant filed a timely notice of appeal, properly preserved his sentencing issue in his motion to modify sentence, and included a Pa.R.A.P. 2119(f) statement in his brief. Therefore, we must now determine whether appellant raises a substantial question.

We determine whether an appellant raises a substantial question on a case-by-case basis. ***Commonwealth v. Swope***, 123 A.3d 333, 338 (Pa.Super. 2015) (citation omitted). "A substantial question exists only

when an appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Id.* (citation omitted).

> In determining whether a substantial question exists, this Court does not examine the merits of whether the sentence is actually excessive. Rather, we look to whether the appellant has forwarded a plausible argument that the sentence, when it is within the guideline ranges, is clearly unreasonable. Concomitantly, the substantial question determination does not require the court to decide the merits of whether the sentence is clearly unreasonable.

*Id.* at 340 (citation omitted).

> A court's exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question. Rather, the imposition of consecutive rather than concurrent sentences will present a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment.
>
> To make it clear, a defendant **may** raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question.

*Id.* at 338 (citation omitted; internal citations and quotation marks omitted; emphasis in original).

Here, the trial court sentenced appellant to 30 to 200 years of incarceration, followed by 30 years of probation. The court imposed consecutive, standard-range sentences of 6 to 40 years for each of the three rape offenses and for each of the two IDSI offenses. The court also imposed consecutive 10-year probationary terms for each of the three aggravated indecent assault offenses. Appellant concedes that the minimum sentence "may not be unreasonable." (Appellant's brief at 17.) Appellant's complaint rests with the maximum sentence imposed because:

> [he] is now 78 years of age, he would have to live three (3) lifetimes just to start his probation. How do you justify that such a sentence is needed to protect the public or the victim? Most probably the victim will be dead more than 100 years before [appellant] starts his probation.

Appellant's brief at 17 (emphasis in original).

Therefore, the gravamen of appellant's complaint is that his sentence is excessive due to its consecutive nature in relation to his advanced age. Just as we have noted that an appellant is not entitled to a volume discount when a court imposes consecutive sentences for multiple crimes,[4] we note that an appellant is not entitled to a seasonal discount when he commits his crimes in the winter of his life. Therefore, because appellant has advanced no plausible argument as to why his sentence is unreasonable considering

---

[4] **See Commonwealth v. Hoag**, 665 A.2d 1212, 1214 (Pa.Super. 1995) (noting that a defendant is not entitled to a "volume discount" for multiple crimes by having all sentences run concurrently).

the nature of his crimes and the length of his sentence, he has failed to raise a substantial question for our review.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/6/2016