J. A15001/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| ERIC WEAVER, | : | No. 2301 EDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, June 23, 2015,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0012655-2010

BEFORE:  FORD ELLIOTT, P.J.E., DUBOW AND JENKINS, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED AUGUST 29, 2016**

Eric Weaver appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County on June 23, 2015, following revocation of his probation.  We affirm.

The trial court set forth the following:

On August 20, 2010, [appellant] was arrested and charged with [possession with intent to deliver ("PWID")][1] and theft.[2]  On April 14, 2011, [appellant] pled guilty to both charges and was sentenced by this Court to a negotiated sentence of 11½ to 23 months [of] county incarceration plus 3 years [of] probation on each charge, to run concurrently with one another with immediate parole.  On August 3, 2011, this Court found [appellant] to be in technical violation and ordered that probation and parole be continued.  On

---

[1] 35 P.S. § 780-113(a)(35).

[2] 18 Pa.C.S.A. § 3921(a).

September 13, 2011, this Court ordered that [appellant] undergo a Forensic Intensive Recovery (FIR) evaluation for dual diagnosis and treatment. On March 23, 2012, [appellant] failed to appear in court for a violation of probation [("VOP")] hearing and this Court issued a bench warrant. On July 18, 2012, this Court found [appellant] to be in technical violation, terminated his parole, revoked his probation, and found him guilty of contempt for his failure to appear. On that same day, this Court sentenced [appellant] to 11½ to 23 months [of] county incarceration plus 6 years [of] probation on the PWID charge, 5 years [of] probation on the theft charge, and 2 months and 28 days to 5 months and 29 days [of] county incarceration on the contempt[3] charge. The sentences on all charges were to run concurrently with one another. [Appellant] was warned at that time that he would receive a sentence of state incarceration if he violated his probation once again. On June 24, 2013, [appellant] was released on parole. On May 8, 2015, [appellant] failed to appear in court [for a probation status hearing] and a bench warrant was issued for his arrest.

On June 23, 2015, this Court held a [VOP] and contempt hearing. [Appellant] was represented at the hearing by Michael DeFino, Esquire, while the attorney for the Commonwealth was Geoffrey MacArthur, Esquire. After this Court reviewed [appellant's] criminal history, defense counsel stated that [appellant] had entered an inpatient detoxification program at Kensington Hospital and was supposed to go to JFK Dual Diagnostic but his insurance had failed to cover it. Defense counsel further stated that, as a result, [appellant] panicked and was afraid to appear for his scheduled court date. This Court subsequently found [appellant] in contempt for his willful failure to appear on May 8, 2015. Prior to sentencing on the contempt charge, [appellant] apologized to this Court and his family and stated that he needed help. Defense counsel

---

[3] 42 Pa.C.S.A. § 4137(a)(2).

argued that [appellant] realized that he had problems, was truthful with his probation officers about his problems and had affirmatively sought treatment for them. Defense counsel further argued that [appellant] had incurred no new arrests and had been working. Defense counsel stated that [appellant's] problems stemmed from the loss of his infant child and that dual diagnosis treatment would be appropriate for [appellant]. This Court then sentenced [appellant] to 2 months and 28 days to 5 months and 29 days [of] county incarceration on the contempt charge.

After sentencing [appellant] on his contempt charge, this Court turned to the violation of his probation. Defense counsel noted that [appellant] had tested negative in the only drug test that he had taken since he had left the hospital. Defense counsel argued that [appellant] had mental health problems due to the death of his child and that his family stated that [appellant] had not been the same since. Defense counsel further argued that [appellant's] actions only harmed himself, that he had not done anything criminal since 2012, and that he had been working since then to try to support himself. Defense counsel argued that [appellant] would benefit from dual diagnosis treatment and that, if he then failed to get the help that he needed, he should serve a sentence of state incarceration. Officer Veronica Robinson, on behalf of the Probation Department, recommended that probation be revoked and that [appellant] receive a forthwith FIR evaluation while in custody.

The Commonwealth attorney noted that [appellant] had a history of absconding from probation and not completing drug treatment programs while under probation with the Honorable Adam Beloff.[4] The Commonwealth attorney further noted that Judge Beloff had warned [appellant] previously that he faced a sentence of state

---

[4] The record reflects that the Honorable Adam Beloff died at some point during his involvement in appellant's case.

incarceration if he continued down the path he was headed. The Commonwealth attorney argued that [appellant] needed drug treatment and that, since he was not getting the treatment he needed on his own, state prison would be the best place for him to get that treatment.

[Appellant] stated that he was sorry for violating his probation and that he truly wanted to address his problems this time. [Appellant] further stated that he had not received any treatment to help him cope with the loss of his child and that the only person he was hurting was himself.

This Court found [appellant] to be in technical violation of both this Court's sentence and the sentence imposed by Judge Beloff[Footnote 1]. This Court revoked the probation it had imposed and sentenced [appellant] to 3½-7 years [of] state incarceration on his underlying PWID charge. This Court imposed no further penalty on the underlying theft charge. Furthermore, this Court revoked [appellant's] probation on Judge Beloff's sentence and sentenced [appellant] to 5 years [of] probation on his underlying [possessing instrument of crime][5] and terroristic threats[6] charges. This Court imposed no further penalty on the underlying theft, simple assault,[7] and [recklessly endangering another person][8] charges. The sentences on all charges were to run concurrently with one another and with the sentence imposed on the contempt charge.

> [Footnote 1] The probationary sentence imposed by Judge Beloff was

---

[5] 18 Pa.C.S.A. § 907(a).

[6] 18 Pa.C.S.A. § 2706.

[7] 18 Pa.C.S.A. § 2701(a).

[8] 18 Pa.C.S.A. § 2705.

consolidated with the sentence imposed by this Court on May 20, 2015.

On July 2, 2015, [appellant], through counsel, filed a motion for reconsideration. On July 23, 2015, [appellant] filed a Notice of Appeal with the Superior Court. On August 13, 2015, after receiving the Notes of Testimony, this Court ordered [appellant] to file a Concise Statement of Errors pursuant to Pa.R.A.P. 1925(b) and [appellant] did so on September 2, 2015.

Trial court opinion, 9/15/15 at 2-5 (record citations omitted).

Appellant raises the following issues for our review:

I. Did the sentencing court abuse its discretion by failing to order a presentence investigation report and by failing to give careful consideration to all relevant factors in sentencing [a]ppellant?

II. Did the sentencing court impose an illegal and unwarranted sentence of total confinement under the circumstances of the case?

Appellant's brief at 2.

Appellant challenges the discretionary aspects of his sentence.

[T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. . . . [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality,

> prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.
>
> The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.

*Commonwealth v. Moury*, 992 A.2d 162, 169-170 (Pa.Super. 2010)

(citation omitted; brackets in original).

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. *Commonwealth v. Sierra*, [752 A.2d 910, 912 (Pa.Super. 2000)]. An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
>> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Moury*, 992 A.2d at 170 (citation omitted; brackets in original).

Here, the record reflects that appellant filed a timely notice of appeal, properly preserved his sentencing issues in a timely petition for reconsideration of his sentence, and included a Pa.R.A.P. 2119(f) statement

in his brief. Therefore, we must now determine whether appellant raises a substantial question.

We determine whether an appellant raises a substantial question on a case-by-case basis. *Commonwealth v. Swope*, 123 A.3d 333, 338 (Pa.Super. 2015) (citation omitted). "A substantial question exists only when an appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Id.* (citation omitted).

> In determining whether a substantial question exists, this Court does not examine the merits of whether the sentence is actually excessive. Rather, we look to whether the appellant has forwarded a plausible argument that the sentence, when it is within the guideline ranges, is clearly unreasonable. Concomitantly, the substantial question determination does not require the court to decide the merits of whether the sentence is clearly unreasonable.

*Id.* at 340 (citation omitted).

Here, appellant first contends that the trial court abused its discretion because it failed to order a pre-sentence investigation ("PSI") report, failed to put its reasons on the record for not doing so, and failed to carefully consider all relevant sentencing factors. (Appellant's brief at 12.) This challenge presents a substantial question. *See Commonwealth v. Kelly*, 33 A.3d 638, 640 (Pa.Super. 2011) ("[A]n appellant's allegation that the trial court imposed sentence without considering the requisite statutory

factors or stating adequate reasons for dispensing with a pre-sentence report [raises] a substantial question.").

Pennsylvania Rule of Criminal Procedure 702 "vests a sentencing judge with the discretion to order a pre-sentence investigation as an aid in imposing an individualized sentence." ***Commonwealth v. Carrillo-Diaz***, 64 A.3d 722, 725-726 (Pa.Super. 2013). This court has held that Pa.R.Crim.P. 702 applies to sentences imposed following the revocation of probation. ***Id.*** We have explained:

> The first responsibility of the sentencing judge [is] to be sure that he ha[s] before him sufficient information to enable him to make a determination of the circumstances of the offense and the character of the defendant. Thus, a sentencing judge must either order a PSI report or conduct sufficient presentence inquiry such that, at a minimum, the court is apprised of the particular circumstances of the offense, not limited to those of record, as well as the defendant's personal history and background. . . . The court must exercise "the utmost care in sentence determination" if the defendant is subject to a term of incarceration of one year or more[.]
>
> To assure that the trial court imposes sentence in consideration of both "the particular circumstances of the offense and the character of the defendant," our Supreme Court has specified the minimum content of a PSI report. The "essential and adequate" elements of a PSI report include all of the following:
>
> (A)   a complete description of the offense and the circumstances surrounding it, not limited to aspects developed for the record as part of the determination of guilt;

(B)    a full description of any prior criminal record of the offender;

(C)    a description of the educational background of the offender;

(D)    a description of the employment background of the offender, including any military record and including his present employment status and capabilities;

(E)    the social history of the offender, including family relationships, marital status, interests and activities, residence history, and religious affiliations;

(F)    the offender's medical history and, if desirable, a psychological or psychiatric report;

(G)    information about environments to which the offender might return or to which he could be sent should probation be granted;

(H)    supplementary reports from clinics, institutions and other social agencies with which the offender has been involved;

(I)    information about special resources which might be available to assist the offender, such as treatment centers, residential facilities, vocational training services, special educational facilities, rehabilitative programs of various institutions to which the offender might be committed, special programs in the probation department, and other similar programs which are particularly relevant to the offender's situation;

(J) a summary of the most significant aspects of the report, including specific recommendations as to the sentence if the sentencing court has so requested.

[While case law does not] require that the trial court order a pre-sentence investigation report under all circumstances, the cases do appear to restrict the court's discretion to dispense with a PSI report to circumstances where the necessary information is provided by another source. Our cases establish, as well, that the court must be apprised of comprehensive information to make the punishment fit not only the crime but also the person who committed it.

*Commonwealth v. Goggins*, 748 A.2d 721, 728 (Pa.Super. 2000) (*en banc*) (citations and quotation marks omitted; brackets in original). "Although Rule 702(A)(2) provides that the requirement to document the reasons for not ordering a pre-sentence report is mandatory," this court has made clear that "sentencing courts have some latitude in how this requirement is fulfilled." *Carrillo-Diaz*, 64 A.3d 722, 726, quoting *Commonwealth v. Flowers*, 950 A.2d 330, 333 (Pa.Super. 2008). Therefore, technical noncompliance with Rule 702(A)(2) may be rendered harmless where a court elicits sufficient information during the colloquy to substitute for a PSI report and allow for a fully informed sentencing decision. *Id.*

Here, although the trial court did not order a PSI report, our review of the record amply supports the conclusion that the trial court elicited, and

also had, sufficient information during the sentencing hearing that allowed for a fully informed sentencing decision.

At the June 23, 2015 VOP/sentencing hearing, the trial court set forth the following:

> THE COURT: Mr. Weaver, as you know, you were originally [sentenced] before this court back on 4/14/2011 at which time you pled guilty to possession with intent to deliver a controlled substance and theft, unlawful taking as a misdemeanor of the first degree.
>
> [APPELLANT]: Yes.
>
> [THE COURT:] You were sentenced that same day to your negotiated sentence of 11 and a half to 23 months in the county plus three years [of] probation on each count to run concurrent with one another with immediate parole. Credit for time served on 8/19/2010 to present. As conditions of my sentence, you were ordered to get drug treatment; undergo random urinalysis; complete job training; seek and maintain employment; stay out of trouble with the law; pay the mandatory court costs and supervision fees. You were also to have [an] FIR evaluation from the street.
>
> You gave us a status date of 7/14/2011. You were found in technical violation a few times between then. And the next time you came back before the court where I sentenced you was 7/18/2012. At which time you were found to be in technical violation for absconding treatment, and you also failed to appear on 3/23/2012. On that day, you also were found in contempt for failure to appear on 3/23/12. I terminated your parole and revoked your probation. I imposed a sentence of 11 and a half to 23 months in the county plus six years [of] reporting probation on the PWID and five years [of] reporting probation on the theft to run concurrent with the probation on the PWID.

On the contempt you received a sentence of two months and 28 days to 5 months and 29 days in the county jail to run concurrent with the sentence on the PWID. You were stipulated to Hoffman Hall where you were ordered to successfully complete six months of drug treatment; complete anger management; complete job training. You were to be made eligible for work release after those things were done. I told you you would get a state sentence next time you came back. And fines, costs and supervision fees were to be paid at $40 per month.

You were subsequently paroled on June 24th, 2013 and a status listing was scheduled for 11/29/2013. You tested positive for Valium because you said you took your mom's Valium. You tested positive for drugs. You were suppose[d] to be going to drug treatment. You were suppose[d] to appear in court on 5/8/2015. At which time you failed to appear. The court issued a bench warrant and wanted cards.

Report of the probation department, 6/18/15, is incorporated into the record by reference. It indicates you continued to test positive for cocaine. And on February 27th, 2015, you tested positive for benzodiazepine and cocaine.

Notes of testimony, 6/23/15 at 2-5.

When the trial court asked appellant why he failed to appear in court when required on May 18, 2015, appellant responded, through counsel, that "he panicked and was afraid to come." (*Id.* at 6-7.) Counsel then described appellant's drug addiction problems, his recovery efforts, his family's consultations with a recovery specialist, and his in-patient addiction treatment. (*Id.* at 6-9.) With respect to his employment status, the court

knew appellant was employed in February 2014 and inquired as to appellant's current employment status. (*Id.* at 10.) Appellant stated that he worked for the teamsters union, but was laid off in 2015 and was not working. (*Id.*) The record further indicates that the trial court had documentation at the VOP/sentencing hearing that demonstrated that appellant had failed to pay his court-ordered fines, costs, and supervision fees. (*Id.* at 11.) When asked about the status of the payments, appellant claimed to have made some, but could not support his contention with documentation. (*Id.* at 10-11.)

The record further reflects that the trial court noted that appellant failed to report to the probation department as required, failed to make contact with the probation department, and failed to appear at his previous VOP hearing. (*Id.* at 12.) The record also demonstrates that during the subject VOP/sentencing hearing, the court referred to a report that reflected that appellant was released from a hospital on April 16, 2015. (*Id.*) The report indicated that following discharge, appellant was not home for a scheduled home visit, and the owner of the home in which he was living stated that appellant had not been seen since he went to the hospital. (*Id.* at 12-13.)

During the hearing, appellant apologized for his conduct and stated that he hurts no one but himself, needs help, and will "make sure [to] make it work." (*Id.* at 8.) Defense counsel also informed the trial court of

appellant's mental health problems, as well as the death of appellant's infant

child, which, counsel said, has been traumatic for appellant. (*Id.* at 14.)  At

that point, the trial court stated:

> THE COURT:  That's what he said in 2012.  I'll read to you what he told me in 2012.[9]
>
> . . . .
>
> THE COURT:  The [appellant] said, I take full responsibility.  The same thing he said today.  I make no excuses.  Same thing he said today.  He said he refused to go to the drug program.  He stopped going to the drug program.  He was living at a recovery house, Heart to Heart.  He said he didn't want to stay at the program where he was because drugs were being brought into the program.  Then he said, I lost a good friend.  He overdosed and killed himself.
>
> [He] didn't come to court.  He had missed that court date, too, on 3/23/12.  He said, I missed the court date because I was scared.  . . .
>
> . . . .
>
> So, he's basically repeating. . . .
>
> . . . .
>
> [] See, the problem is I know that.  I know he has a problem.  I know he's had a problem since he pled guilty at the very beginning, which is why I sent him to drug treatment already.  He's been to drug treatment twice.  He was to get [an] FIR evaluation from the street when I first sentenced him in 2011.  And then when I sentenced him in 2012, I sent him

---

9 During the hearing, the trial court stated that it takes "copious notes" during proceedings that it presides over, including appellant's prior proceedings.  (*Id.* at 16.)  The record further indicates that the trial court referred to those notes at the VOP/sentencing hearing.

> to Hoffman Hall. And I don't know if you are familiar with Hoffman Hall, but Hoffman Hall has a very good drug treatment program inside this minimum security private jail. I've been there several times. It's a nice jail. I've sent him to one of the nicest jails in town that I know has a good program and he still didn't --

*Id.* at 15-17.

The trial court then asked appellant's probation officer for his recommendation, and he recommended revocation. (***Id.*** at 20.) Additionally, the Commonwealth informed the trial court of appellant's history of absconding from probation and not completing drug treatment. (***Id.***) The Commonwealth recognized that appellant "obviously needs drug treatment," and stated that because appellant has been unsuccessful on his own, the next logical step is state prison. (***Id.*** at 20-21.)

The record demonstrates that the trial court conducted a sufficient pre-sentence inquiry and possessed sufficient information to substitute for a PSI report, thereby allowing a fully informed and individualized sentencing decision. In making its sentencing determination, the trial court considered appropriate sentencing factors, including the nature of the offense, a description of appellant's criminal history, appellant's employment history and current employment status, appellant's familial relationships,[10] appellant's drug problem, appellant's involvement in drug treatment and

---

[10] The record reflects that appellant's parents attended the June 23, 2015 VOP/sentencing hearing. The record further reflects that appellant's parents have attempted to aid in his recovery.

efforts at rehabilitation, appellant's expressions of remorse, appellant's failure to pay court-ordered fines, appellant's history of absconding from judicial proceedings and failing to report to the probation department, and appellant's lack of success under probation. Therefore, on the basis of the record before us, we find no abuse of discretion.

Appellant next complains that the sentencing court violated 42 Pa.C.S.A. § 9771(c) by imposing a sentence of total confinement following a technical probation violation, absent appellant having been convicted of a new crime, absent any indication that he was likely to commit a new crime, and absent a need to vindicate the authority of the court. The imposition of a sentence of total confinement following the revocation of probation for a technical violation, and not a new criminal offense, implicates the "fundamental norms which underlie the sentencing process." *Commonwealth v. Crump*, 995 A.2d 1280, 1282 (Pa.Super. 2010) (citation omitted).

> When imposing a sentence of total confinement after a probation revocation, the sentencing court is to consider the factors set forth in 42 Pa.C.S.[A.] § 9771. *Commonwealth v. Ferguson*, [893 A.2d 735, 738 (Pa.Super. 2006)]. Under 42 Pa.C.S.[A.] § 9771(c), a court may sentence a defendant to total confinement subsequent to revocation of probation if any of the following conditions exist:
>
> 1. the defendant has been convicted of another crime; or

> 2. the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or
>
> 3. such a sentence is essential to vindicate the authority of this court.
>
> ***See also Commonwealth v. Coolbaugh***, [] 770 A.2d 788 (Pa.Super. 2001).
>
> A sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender. ***Commonwealth v. Malovich***, [] 903 A.2d 1247 (Pa.Super. 2006).

***Crump***, 995 A.2d at 1282-1283.

Here, the record reflects that over the course of several years, the trial court has given appellant more than one opportunity to reform, and appellant opted against taking any of those opportunities. As stated by the trial court:

> [THE COURT:] This sentence is absolutely necessary to vindicate the authority of the court. This defendant has basically thumbed his nose at both Judge Beloff and myself and done things the way he wanted to do even though all the while still getting into trouble. We both apparently have been giving him opportunities to address his drug problem in the county. And I've given him an opportunity to address his drug problem in the county at least twice. And he has basically not done what he was suppose[d] to do either time.

***Id.*** at 26.

- 17 -

Therefore, the record reflects that the trial court imposed a sentence of total confinement consistent with section 9771(c). *See* 42 Pa.C.S.A. § 9771(c); *see also Commonwealth v. Malovich*, 903 A.2d 1247 (Pa.Super. 2006) (holding that where the record demonstrated that appellant failed to comply with previous judicial efforts, such as drug court; appellant had not "been putting anything into" court-imposed rehabilitation efforts; and it was important for appellant to appreciate seriousness of his actions, imposition of sentence of total confinement following revocation of probation is appropriate to vindicate court's authority). Therefore, after a careful review of the record, this claim lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/29/2016