J-S60026-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LEWIS T. WATKINS | : | |
| | : | |
| Appellant | : | No. 340 MDA 2018 |

Appeal from the Judgment of Sentence September 19, 2017
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0006151-2016

BEFORE: SHOGAN, J., NICHOLS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY NICHOLS, J.:               **FILED NOVEMBER 06, 2018**

Appellant Lewis T. Watkins appeals from the judgment of sentence of three to ten years' incarceration following a jury trial and convictions for stalking[1] and terroristic threats.[2]  He challenges the trial court's decision to impose consecutive sentences in the aggravated range because of Appellant's alleged statements to a different judge regarding unrelated charges for which he was acquitted.  We hold Appellant has failed to preserve his challenge for appellate review and affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2709.1(a)(1).

[2] 18 Pa.C.S. § 2706(a)(3).

We glean the facts from the record.[3]  Briefly, on April 17, 2012, Appellant was employed at Alcoa[4] when he was involved in an accident.  N.T. Trial, 6/26/17, at 77.  Alcoa tested Appellant for drugs, and he tested positive for marijuana and cocaine.  *Id.*  As a result, Alcoa sent Appellant to a pre-paid drug rehabilitation facility.  *Id.* at 78.  As a condition of entering the drug rehabilitation facility, Appellant signed a release that prevented the facility from disclosing copies of Appellant's laboratory results, including urine tests, to Alcoa.  *Id.* at 79, 85-86.  The facility, however, expelled Appellant on June 20, 2012, because he failed to comply with the requirements for treatment. *Id.* at 79-80, 83.  The facility advised Alcoa that Appellant missed several treatment sessions, exhibited signs of intoxication, and had two positive urine tests.  *Id.* at 81-82.  As a result, Alcoa fired Appellant on June 20, 2012.  *Id.* at 84.

Subsequently, Appellant contacted Alcoa and requested copies of his personnel and medical file, as well as copies of the laboratory results.  *Id.* at 86.  Alcoa provided Appellant's personnel and medical file but because of Appellant's signed release, it never possessed the laboratory results.  *Id.* at 86, 88-89.

---

[3] We state the facts in the light most favorable to the Commonwealth, as the verdict-winner.  *See generally Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000).

[4] We acknowledge that Alcoa was split into two companies in 2016.  For simplicity's sake, we just refer to the employer as Alcoa.

In 2015, the police charged Appellant with stalking Thomas Holbert, one of Alcoa's human resource managers. *Id.* at 99, 102. A trial was held on September 26th and 27th, 2016, and Appellant was found not guilty. *Id.* at 102. At that particular trial, which was not the underlying trial, Holbert had testified that Alcoa did not possess the laboratory results Appellant had been requesting. *Id.*

Immediately following the not-guilty verdict in September of 2016, Appellant began leaving numerous voicemails on Holbert's work mobile phone demanding Appellant's full personnel file, including the laboratory results. *Id.* at 103-06. Over time, Appellant's voicemails became increasingly belligerent and intimidating, and they included threats to personally appear at Holbert's home and workplace to obtain his personnel file and advice to Holbert about how to improve the parking of his car at work. *Id.* at 108-09, 112, 118, 120. While Holbert and his family were watching a Pittsburgh Steelers football game, Appellant left a voicemail specifically mentioning that game, which frightened Holbert. *Id.* at 112-13, 115. The numerous voicemails caused Holbert to change his phone number, install a burglar alarm, close his blinds, and alter his daily routine. *Id.* at 115.

Also in September and October of 2016, Appellant began leaving "intimidating" voicemails to Tracey Hustad, one of Alcoa's human resources directors, requesting Alcoa to provide the laboratory results. *Id.* at 89-93, 95. Hustad consistently responded that Alcoa could not produce the results

because it never had them. *Id.* at 86. We add that all voicemails were forwarded to Alcoa security.

Brian Leadbetter, chief security officer for Alcoa, similarly testified at the June 2017 trial that he informed Appellant that Alcoa did not have the laboratory reports at issue. *Id.* at 126. On October 10, 2016, after verifying Appellant's address and email address, Alcoa sent a cease-and-desist letter meticulously detailing Appellant's behavior, enclosing another copy of Appellant's personnel and medical files, and again denying any possession of any laboratory test results. *Id.* at 134-36. Alcoa sent the files via FedEx, but Appellant refused to sign and receive the package. *Id.* at 140. Alcoa reported Appellant's activities to the police, and the police arrested Appellant on October 24, 2016. *Id.* at 146-47.

The above facts were presented at Appellant's June 2017 jury trial. After the Commonwealth rested, the trial court advised Appellant of his right to testify. *Id.* at 150. Appellant subsequently testified, generally disputing the facts presented by the Commonwealth.

Appellant rested, and the jury found him guilty of the above-mentioned crimes. Following a pre-sentence investigation, the court held a sentencing hearing, at which the court said, in pertinent part:

> Being the Judge who presided over the jury trial in this, I am quite familiar with all of the fact and the positions taken by [Appellant] with respect to his actions. And one of the things that sticks out to me is right after his acquittal in 2016 [of stalking Holbert], an admonishment from [that trial judge] following that trial that you can't be doing this stuff, this isn't the way to handle it, he

- 4 -

immediately begins to engage in a course of conduct that - since I am not familiar with the facts of the previous case just the nature of the charges -- must have been even more intense and persevering because in this instance, a jury of 12 did find you guilty of stalking and terroristic threats. And those are serious crimes. They are graded as misdemeanors, but they are crimes that go to the very heart of another person's sense of safety and well being.

N.T. Sentencing Hr'g, 9/19/17, at 19. The court, after giving additional reasons for its sentence, then sentenced Appellant to two consecutive terms of one-and-a-half to five years' imprisonment for an aggregate sentence of three to ten years' imprisonment. *Id.* at 25.

Appellant filed a post-sentence motion contending that his aggregate sentence falls within the aggravated range of the sentencing guidelines. Appellant's Post-Trial Mot., 9/21/17, at 2 (unpaginated). He challenged his sentence as follows:

The aggregate sentence totals three (3) to ten (10) years.

7. The sentences as imposed fall within the aggravated range of the standard sentencing guidelines.

8. Although [Appellant] has a criminal record placing his prior record score at five (5), the vast majority of these offenses are summary and misdemeanors offenses that do not exhibit a violent history necessitating an aggravated sentence, with the sole exception occurring in 1984 in California.

9. [Appellant] likewise does not have a record of prior, similar offenses that would indicate a lack of amenability to treatment and/or rehabilitation.

10. In the present case, [Appellant's] actions did not result in physical harm or medical care to any of the victims.

11. The victims in the present case were not particularly vulnerable, nor were they members of a protected class that would call for an aggravated sentence.

*Id.*

On January 22, 2018, the trial court denied Appellant's post-sentence motion. In its decision, the court justified its sentence in part as follows:

Likewise, [Appellant's] contention that the victims in the instant matter do not call for an aggravated sentence because they were neither "particularly vulnerable" nor "members of a protected class" is unpersuasive. Initially, the court notes that [Appellant] had been warned to discontinue his communications with the victim in this matter by the Honorable Joseph C. Madenspacher in a previous judicial proceeding. Failing to heed this warning, [Appellant's] threats drastically increased in both volume and severity, while adding personal effects which amplified their seriousness. As indicated by the Commonwealth, "[t]he victim suffered financial, social and emotional loss caused by the need for increased security and worry over the safety of himself and his family." Commonwealth Answer, p. 2.

Trial Ct. Op. at 5-6 (footnote omitted).

The court docketed Appellant's *pro se* notice of appeal on January 31, 2018. The docket reflects that the court served its Pa.R.A.P. 1925(b) order on February 28, 2018, and Appellant timely filed his Rule 1925(b) statement on March 19, 2018. Appellant's Rule 1925(b) statement raises the following issue:

1. The Honorable Court abused its discretion by imposing manifestly excessive and clearly unreasonable consecutive sentences in the aggravated range for an aggregate of 3 to 10 years in a state correctional institution under the following circumstances:

a) Mr. Watkins generally lacks a violent criminal history;

b) his instant crimes did not occur against a protected class;

c) his instant crimes did not result in physical harm or injury to any victims;

d) and the [c]ourt impermissibly aggravated Mr. Watkins, in part, because of an admonition directed to Mr. Watkins from a previous trial court not to contact his employer following a trial in which Mr. Watkins was found not guilty and absolved of criminal liability by a jury of his peers.

Rule 1925(b) Statement.

Appellant's brief solely raised the last issue:

Was the trial court's decision to impose consecutive sentences in the aggravated range based on purported statements made to [Appellant] by a different judge, on different charges of which he was acquitted, a manifest abuse of the court's discretion?

Appellant's Brief at 12.

Initially, Appellant challenges the discretionary aspects of his sentence, an issue that is not appealable as of right. *See Commonwealth v. Colon*, 102 A.3d 1033, 1042 (Pa. Super. 2014). Instead, this Court has set forth an analytical framework under which we determine whether we may exercise our discretion to hear such an appeal. Under that framework, we determine—

(1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question [regarding the sentence's impropriety under the Sentencing Code]. [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

*Id.* at 1042–43 (citation omitted). "Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing

hearing or in a motion to modify the sentence imposed." ***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010).

Here, Appellant failed to raise the issue of alleged statements made by him to a different judge on unrelated charges for which he was acquitted. Appellant opted not to challenge the trial court's acknowledgment of an "admonishment [from Judge Madenspacher] following that trial that you can't be doing this stuff, this isn't the way to handle it . . . .", N.T. Sentencing Hr'g at 19, either at the sentencing hearing or in a post-sentence motion. ***See Moury***, 992 A.2d at 170. Accordingly, he has waived the issue, and we affirm the judgment of sentence. ***See id.***[5]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/6/2018

---

[5] But even if Appellant did not waive the issue, and assuming he complied with the requirements set forth in ***Colon***, 102 A.3d at 1042, we would not have granted relief. ***See Commonwealth v. Bowers***, 25 A.3d 349, 356 (Pa. Super. 2011) (stating that a sentencing court may consider "arrests that result in acquittals, if the judge is aware of the acquittal" (citations omitted)).