J-S28043-19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

COMMONWEALTH OF PENNSYLVANIA,   :   IN THE SUPERIOR COURT OF
       :                PENNSYLVANIA
             Appellee       :
       :
            v.         :
       :
DWAYNE HANDY,        :
       :
         Appellant     :   No. 1872 MDA 2018

Appeal from the Judgment of Sentence Entered October 12, 2018
in the Court of Common Pleas of Lackawanna County
Criminal Division at No(s): CP-35-CR-0002415-2017

BEFORE:    BOWES, J., MCLAUGHLIN, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:         **FILED JULY 31, 2019**

Dwayne Handy (Appellant) appeals from his judgment of sentence imposed following his conviction for illegally kicking a police animal in violation of 18 Pa.C.S. § 5548(a). We affirm.

In 2017, Appellant was charged with escape, resisting arrest, illegally kicking a police animal, and possession of marijuana. On the day of trial, the Commonwealth withdrew the escape charge, and the remaining charges proceeded to a jury trial conducted in July 2018. The trial court summarized the testimony at trial as follows.

> On September 29, 2017, members of the Scranton Police Department patrolled the area of the Valley View and Hilltop housing projects. Sergeant Jeffrey Vaughn and Officer Nicholas Hurchick noticed a silver Mercury Grand Marquis pass by their patrol car with an expired inspection sticker. … Sergeant Vaughn [testified] that he observed the vehicle traveling at a high rate of speed[, and the officers] activated their lights and sirens in an effort to effect a traffic stop. The vehicle did not

*Retired Senior Judge assigned to the Superior Court.

immediately stop and instead continued at a "slow crawl," and the officers observed two occupants in the vehicle. The vehicle continued for about one to two blocks before coming to a complete stop.

When the vehicle came to a stop, the passenger door opened and the front seat passenger, who was later identified as Appellant, took off running. Officer Hurchick proceeded to chase after Appellant [as] Sergeant Vaughn … pursued the driver.

[As] Officer Hurchick … chased Appellant, [he] yelled for him to stop. The chase continued through various yards, and ended in the vicinity of 628 and 630 East Locust Street. Officer Hurchick then lost sight of Appellant. Other officers responded to the scene, including the canine officer, Gunner[,] and his handler[,] Officer Gerald Tallo. Officer Hurchick stated he was standing on the curb with Officer Jason Hyler, and he observed Gunner approach the steps of the porch of 630 East Locust Street. He testified that there was a few inch gap between the floor of the porch and a railing. This gap was wide enough to allow [Officer Hurchick] to see an object "flailing." Officer Hurchick [then] observed Gunner's head "snap back." He testified he could clearly see Gunner's head and a person with a blue shirt. [At that point, Gunner apprehended Appellant by biting his left leg]. As the officers approached the porch, they observed Appellant kicking Gunner [and] they told him to stop kicking or the dog [would] not release his leg. [Appellant stopped kicking and Gunner released his leg. Appellant was] arrested, and taken into custody.

Officer Tallo … testified that Gunner has training in narcotics, tracking, building searches, [and] evidence recovery. [O]n the date in question[, [Officer Tallo] heard, over the police radio, that an officer was on foot in pursuit of a suspect[.] Officer Tallo began heading towards the 600 block of East Locust Street…. Officer Tallo and Gunner met with Officer Hurchick who brought them back to Appellant's last known location.

Officer Tallo described that Gunner was secured by his tracking harness[, which said "police" on both sides,] and his 20 foot leash. He offered Gunner a whiff of a jacket found by the officers in a yard. Gunner was given the track command and began tracking the scent. Gunner began to stand on his hind

- 2 -

legs and started sniffing at stacks of boxes on the side of the house [near where the jacket had been found]. Gunner led the officers back out to the front of 630 East Locust Street[,] in between two houses. Officer Tallo testified that Gunner came around to the front of the house and went up the stairs of the porch, quickly came back down, then went up the steps again. [According to Officer Tallo, when Gunner returned to the porch, his] tail was up and he was pushing back with his front paws. Officer Tallo could only see the back side of Gunner, but he heard Appellant yell out in pain. He stated that Gunner … apprehended Appellant by biting Appellant's left lower leg. He told Appellant to stop kicking the dog. Officer Tallo described that Gunner's mouth is the only method of defense when a person is kicking him. He later testified that he did not see Appellant kick the dog[;] he only saw movement on the porch. Officer Tallo gave the command to release Appellant and Appellant was then arrested.

Officer Jason Hyler was also called to testify. [After hearing over the radio that] Officer Hurchick was in an active foot pursuit [of a suspect, Officer Hyler] arrived on scene [and] began to assist Officer Tallo and Gunner with the track as the "eyes and ears." Officer Hyler described that Gunner began to track [Appellant] to 630 East Locust Street and then watched Gunner go up the steps, come back down[,] and abruptly go back up the steps. Officer Hyler stated that there was a [six] inch gap in between the porch and the railing where he was able to see movement. He saw legs "flailing out" and the legs were kicking at Gunner. [Specifically, he saw two legs in khaki pants and black sneakers striking Gunner's head, causing it to "snap back"]. He observed Appellant kick Gunner three to five times [and then] Gunner apprehended Appellant by biting Appellant's left leg. Officer Hyler testified that he [and Officers] Tallo and Hurchick went up onto the porch as Appellant was still actively kicking the dog. The officers warned Appellant that the dog would not stop biting him until he stopped kicking. [Appellant stopped moving and Officer Tallo stopped Gunner's apprehension].

Appellant testified in his own defense. He disputed the officers' ability to see between the railing and the [porch] floor. Additionally, he testified that when Gunner approached him Gunner was sitting and growling angrily. He stated Officer Tallo

gave Gunner a command to attack. He testified his hands were cuffed [and Officer Hyler was holding down his leg] when the dog attacked him. Appellant stated the dog did not let go until Officer Tallo gave the release command. He testified that he did not kick Gunner and that the officers [were] lying.

Trial Court Opinion, 2/1/2019, at 2-5 (some identifying designations changed; record citations omitted; some commas altered).

After hearing the foregoing evidence, the jury was hung on the resisting arrest charge, convicted Appellant of illegally kicking a police animal, and acquitted Appellant of possession. Following the trial, Appellant filed a motion for judgment of acquittal and/or for a new trial challenging both the sufficiency and weight of the evidence. On October 12, 2018, the trial court denied Appellant's motion and sentenced Appellant to one to three years of incarceration.

This timely-filed appeal followed. Appellant and the trial court complied with Pa.R.A.P. 1925. Appellant raises three issues on appeal: a challenge to the sufficiency of the evidence; a claim that the verdict was against the weight of the evidence; and a challenge to the trial court's failure to instruct the jury in accordance with Appellant's suggested jury instructions. Appellant's Brief at 5-6.

To address a challenge to the sufficiency of the evidence, we must determine

> whether, viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as the] verdict winner, there is sufficient evidence to enable the fact-finder to find every

element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 716 (Pa. Super. 2015) (citation omitted).

In order to prove that Appellant violated subsection 5548(a), the Commonwealth had to establish that Appellant intentionally or knowingly taunted, tormented, teased, beat, kicked, or struck a police animal. 18 Pa.C.S. § 5548(a).

Appellant's challenge to the sufficiency of the evidence is premised on two arguments. Appellant first argues that despite Officer Hyler's testimony that he saw Appellant kick Gunner's head, such testimony is insufficient to support the verdict because Appellant proved the gap was at least four inches smaller than Officer Hyler's estimate, Officers Hurchick and Tallo did not see Appellant kick Gunner from the same vantage point as Officer Hyler, and Gunner did not show any physical signs of having been kicked or injured. Appellant's Brief at 14-15.

Officer Hyler's specific testimony regarding his line of vision was that "there was like a six-inch gap in between the top of the porch … and … that

solid, stucco railing. And I was able to see movement there." N.T., 7/12/2018 p.m., at 42. He testified that the distance was approximate and he did not measure it, so he was "[n]ot overly surprised" that the gap was less than two inches. *Id.* at 45. He maintained that "it was still enough that you could definitely identify movement and see that it was an []animate object there that was moving." *Id.* He later identified the object as a person when he saw it was "legs that were kicking and flailing and striking Gunner." *Id.* Officer Hyler showed the jury where he was standing vis-à-vis the other officers, Gunner, and Appellant. *Id.* at 51-52. From his vantage point, he was able to see Appellant's legs kick Gunner three to six times before Gunner apprehended Appellant. *Id.* at 46.

Although the other officers did not see Appellant specifically kick Gunner, their testimony is consistent with Officer Hyler's testimony. Officer Hurchick testified he saw a flailing object through a several inch gap between the railing and porch floor, along with Gunner's head snapping back prior to Gunner's apprehending Appellant. N.T., 7/12/2018 a.m., at 26-27. Similarly, Officer Tallo testified that through the several-inch gap, he saw something moving towards Gunner, Gunner's head "rear back," and Gunner's apprehension of Appellant, in that order. *Id.* at 73-74.

In a sufficiency challenge, in addition to viewing the evidence in the light most favorable to the Commonwealth, we must look at "all reasonable inferences drawn" therefrom. *Commonwealth v. Wise*, 171 A.3d 784, 790

- 6 -

(Pa. Super. 2017). If believed, Officer Hyler's testimony is sufficient to demonstrate that Appellant kicked a police animal, and because Appellant kicked Gunner multiple times before Gunner apprehended him, the jury could circumstantially infer that Appellant kicked Gunner intentionally or knowingly. Proof of actual injury to a police animal is not an element of subsection 5548(a); just kicking the police animal, so long as the kick was done with the required *mens rea*, is enough. **See** 18 Pa.C.S. § 5548(a).

Although Appellant testified he did not kick Gunner, N.T., 7/12/2018 p.m., at 122, the "fact-finder is free to believe all, part, or none of the evidence presented," and it "is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder." **Commonwealth v. Rodriguez**, 141 A.3d 523, 525 (Pa. Super. 2016). Distilled to its essence, Appellant's argument is essentially a challenge to the credibility of Officer Hyler, which is really a weight challenge, not a sufficiency challenge. **Commonwealth v. Bowen**, 55 A.3d 1254, 1262 (Pa. Super. 2012) (holding claim that factfinder should have believed Bowen's version of events over another witness's version goes to the weight, not the sufficiency of the evidence).

In the alternative, Appellant argues that to the extent he did make contact with Gunner while Gunner was biting him, Appellant disputes that he did so intentionally or knowingly. Appellant's Brief at 15-16. Appellant maintains that "he was in shock, fear, and pain so extreme as to prevent

any normal person from forming the necessary *mens rea*," and therefore his actions were not voluntary within the meaning of 18 Pa.C.S. § 301 ("A person is not guilty of an offense unless his liability is based on conduct which includes a voluntary act…."). ***Id.*** at 16.

Appellant's argument that his actions were not voluntary are belied by the evidence. Even assuming *arguendo* that a "shock, fear, and pain" response could render an action involuntary, the evidence in this case shows he kicked Gunner multiple times **before** Gunner bit him, not just during his struggle with Gunner while Gunner was biting him. Accordingly, because the Commonwealth proved all elements of the statute beyond a reasonable doubt, Appellant's sufficiency challenge garners him no relief.

We turn next to Appellant's second issue, which posits that the verdict is against the weight of the evidence. Appellant essentially recycles the same arguments he made with regard to the sufficiency challenge. Appellant's Brief at 16-17.

We use the following standard to analyze Appellant's weight challenge.

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is

imperative so that right may be given another opportunity to prevail.

*Commonwealth v. Izurieta*, 171 A.3d 803, 809 (Pa. Super. 2017) (citation omitted).

In its analysis of Appellant's weight challenge, the trial court focused on Officer Hyler's testimony, and found it to be corroborated by the testimony of the other officers. Trial Court Opinion, 2/1/2019, at 8. Given the testimony of the officers, the trial court determined the guilty verdict did not shock its sense of justice. We discern no abuse of discretion in the trial court's determination. *See Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000) ("Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination[.]"). Although Appellant focuses on the size of the gap that provided the viewing point, the fact remains that there was a viewing point, and the jury clearly believed Officer Hyler's testimony that he could see legs kicking Gunner's head. Thus, no relief is due.

In his final issue, Appellant argues the trial court erred by reading the standard jury instruction for subsection 5584(a) without a corresponding instruction explaining that Appellant's actions must have been voluntary

pursuant to 18 Pa.C.S. § 301(a).[1]  Appellant argues that his foot may have touched Gunner while Gunner was biting his leg, and if so, it was because Appellant was unable to control his bodily movements due to "extreme shock, terror, and excruciating pain."  Appellant's Brief at 18-20.  In such circumstances, Appellant argues that his action could have been intentional or knowing but also involuntary, and he was prejudiced by the trial court's failure to include an instruction on voluntariness as Appellant requested.  *Id.*

We first consider whether Appellant preserved this issue for appeal. Our rules of appellate procedure provide that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a).  To preserve a challenge to the adequacy or omission of a particular jury instruction, the defendant must make a specific and timely objection to the instruction at trial before the jury deliberates. *Commonwealth v. Smith*, 206 A.3d 551, 564 (Pa. Super. 2019); Pa.R.A.P. 302(b) ("A general exception to the charge to the jury will not preserve an issue for appeal.  Specific exception shall be taken to the language or omission complained of."); Pa.R.Crim.P. 647(C) ("No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate.").

---

[1] That statute, which relates to culpability in general, provides that "[a] person is not guilty of an offense unless his liability is based on conduct which includes a voluntary act or the omission to perform an act of which he is physically capable." 18 Pa.C.S. § 301(a).

"[I]n the criminal trial context, the mere submission and subsequent denial of proposed points for charge that are inconsistent with or omitted from the instructions actually given will not suffice to preserve an issue, absent a specific objection or exception to the charge or the trial court's ruling respecting the points." ***Commonwealth v. Hitcho***, 123 A.3d 731, 756 (Pa. 2015) (internal quotation marks and citation omitted). Furthermore, "a defendant waives subsequent challenges to the propriety of the jury charge on appeal if he responds in the negative when the court asks whether additions or corrections to a jury charge are necessary." ***Commonwealth v. Moury***, 992 A.2d 162, 178 (Pa. Super. 2010).

The record reveals that in his proposed points for charge, Appellant requested that the trial court instruct the jury that to find him guilty of illegally kicking a police animal, he must have performed a voluntary act. At the charging conference, after the trial court read the standard jury instruction for subsection 5548(a), Appellant's counsel stated, "I just want to make sure that the third part of illegally [kicking] is that he did so voluntarily[.]" N.T., 7/12/2018 p.m., at 156. The trial judge responded, "[n]o, that is not in the standard instruction." ***Id.*** Appellant's counsel then said, "That's not in?" ***Id.*** at 157. The trial judge stated, "I got the standard instruction here," to which Appellant's counsel simply stated, "Okay." ***Id.***

In front of the jury, the trial judge read the standard instruction, which informed the jury that they must find that Appellant taunted, tormented,

teased, beat, kicked, or struck a police animal, and that he did so intentionally and knowingly. *Id.* at 204-05. The trial judge further explained that a police animal includes a police dog, and the jury must find that Appellant had "the intent to commit an act that he knew the law would forbid or [] consciously disregard[ed] a substantial and unjustifiable risk that his conduct would bring about … the harm to be prevented." *Id.* Appellant's counsel did not object at this time. When the trial judge asked counsel at the end of the jury charge if they had "any additions, omissions, or corrections to the charge other than what we discussed in our charging conference," Appellant's counsel responded, "No, Judge." *Id.* at 208-09. No mention was made of the charge again until after the jury delivered its verdict, when Appellant included a challenge to the jury instruction in his motion for acquittal and/or a new trial.

After review of the foregoing, we conclude that Appellant waived his third issue. Appellant's mere mention of his requested instruction at the charging conference is not a timely, specific objection. He had further opportunities to raise his objection before the jury deliberated but he did not. *Moury*, 992 A.2d at 178. Accordingly, Appellant's challenge to the jury instruction is waived.[2]

---

[2] Even if we were to consider Appellant's mention of his requested instruction at the charging conference as a specific objection, Appellant's issue would afford him no relief. The instruction provided by the trial court tracked the
*(Footnote Continued Next Page)*

Based on the foregoing, none of Appellant's issues merits relief. Accordingly, we affirm his judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/31/2019

*(Footnote Continued)* ———————————

elements of the statute and described the required *mens rea*. Appellant's argument in support of providing the jury with more information about the voluntariness of his actions is premised upon his contention that he struck the dog involuntarily out of fear, shock, and pain while the dog was biting him. The record does not support his contention. Appellant specifically denied kicking the dog at trial, and the testimony of the other witnesses demonstrated that Appellant kicked Gunner before Gunner bit him. Therefore, the trial court did not err or abuse its discretion in declining to provide the instruction requested by Appellant. ***See Commonwealth v. Briggs***, 12 A.3d 291, 340 (Pa. 2011) (holding that trial court did not err in denying requested instruction when there was no evidence of record supporting such an instruction).